Statement of the Case.
MONROE, C. J.
Leonce Desforges, who had been twice married, died in 1911, leaving a widow, in community, children and grandchildren, a small estate, and an olographic will whereby he bequeathed the estate to the widow, and appointed her execu *52 trix. The children and grandchildren of the first marriage were: Angela, wife of Charles A. Sicard; Leonce; Emma, wife of E. S. Rapier; Stella, wife of John J. O’Neill — children of full age — Alma and Lester, minor children of a predeceased son Charles; and George, Walter, Edna, Cecelia, and Robert, minor children of a predeceased son Joseph. The children of the second marriage were Virginia and Juliet, of full age, and Edward, a minor. Mrs. Sicard and Leonce instituted suit, attacking the will, on the ground that it sought to deprive them of their mother’s interest in the first community and of their légitime in the estate of their father; and there was a judgment reducing the bequest to the widow to the disposable portion, which was acquiesced in and was followed by an attempted partition, to the homologation of which oppositions were filed by all of the parties in interest save the widow. The issues so raised have been reduced, by concessions, to the following, to wit:
(1) Whether the widow is entitled to a sum of $2,101.35, being the proceeds of a certain policy of life insurance “carried by the deceased.”
(2) Whether the heirs of Charles Desforges should be compelled to collate certain sums of money said to have “been advanced to their father.”
The question first stated was decided by the judge a quo in the negative.. The question last stated was decided in the affirmative.
The only appellants before the court are the widow, in her capacity as executrix and individually, and the children of Charles Desforges; Lester having attained majority, and the minor, Alma, being represented by the Hibernia Bank & Trust Company, as dative tutor.
The policy of insurance in question was issued on June 30, 1890, for $2,500, “on the 15 payment, life, 15-year survivorship dividend plan,” and “was payable to Oleptie Desforges, wife of the insured, her administrators, executors, or assigns”; the annual premium was $171.20, payable in quarterly installments of $42.80, during the 15-year premium paying period; and the premiums paid during that period amounted,' in the aggregate, to $2,568. The option was then chosen of surrendering the policy for its guaranteed surrender value, plus the accumulated dividends, amounting to $2,101.35, for which a check was drawn on July 6, 1905, to the joint order of the insured and his wife, and, having been indorsed by them, was duly paid. The proceeds of the check went into the hands of the decedent, by whom it was at a later date invested, with other money, in his own name in the stock of a corporation with which he was connected, and which stock constitutes part of the assets of his succession. In that connection it may be stated that the decedent left a written instrument attached to the certificate representing the stock thus mentioned, which reads, in part, as follows, to wit:
“New Orleans, January 6, 1906.
“In the purchase of sixty (60) shares of stock in J. & M. Schwabacker, Limited, as per annexed certificate, No. 33, dated January 2, 1906, I used the following sums of money, the personal and exclusive property of my wife, Oleptie Desforges, viz.: * * * Second. $2,101.35 (twenty-one hundred and one 35/100 dollars) from the Manhattan Life Insurance Co. of New York, being the cash surrender value of a paid-up policy on my life, taken out for her personal and exclusive benefit. Which amounts, as above, I hereby acknowledge to be her separate and exclusive property, and, by these presents, pledge to her the annexed certificate of stock in J. & M. Schwabacker, Limited, as security to her for the same.”
The instrument bears the signatures of the decedent and of two witnesses; but it does not appear to have been brought to the knowledge of Mrs. Desforges, nor was the certificate to which it refers assigned or delivered to her.
According to the pro jet of the partition, *54 the active mass of the estate consisted of the interest of the decedent in stock in the Schwabacker Compahy (including that above mentioned), valued at $20,000, contents of residence, $611.25, cash on deposit, $1,633.92, making a total of $22,245.17. The passive mass is made up of funeral expenses, $279, expenses of last illness, $65; attorney’s fees and costs, in succession, $724.95, ordinary debts, exclusive of those said to be due to the widow, $31.37, various amounts said to be due to the widow, aggregating $8,748.86, making a total of $9,849.28 (incorrectly stated as $8,748.96), and leaving the net value of the property to be partitioned, $12,395.89 (incorrectly stated as $12,730.21).
According to the judgment appealed from, the widow was recognized as a creditor of the estate for two sums ($530 and $500) aggregating $1,030, and her claims in other respects were rejected, so that the net value of the estate as ascertained by said judgment is $20,114.85, without taking into consideration the amounts claimed by way of collation from the heirs of Charles Desforges.
There were offered in evidence, in support of the claim against the heirs of Charles Desforges, for collation, notes executed by Charles Desforges, and found among the effects of his father at the time of the latter’s death, for various amounts, aggregating $2,-686.35, and bearing various dates from January 9, 1889, to January 13, 1890, inclusive. To three of the notes, there was found attached a memorandum, in the handwriting of the decedent, Leonee Desforges, and signed by him, reading:
“These three notes, amounting to four hundred and fifty dollars, are due to me by Charles Desforges, and same are to be held against him.”
To three other notes, there was found attached a similar memorandum, reading:
“Three unpaid notes, five hundred dollars, six hundred dollars, six hundred dollars, my claim versus Charles Desforges.”
To two of the notes, there was found attached a similar memorandum, reading:
“J. & M. Schwabaeker’s claim v. Charles Desforges, eight hundred and sixty-four dollars and thirty-five cents; the above amount to hold ‘good’ against Charles Desforges in my succession.”
It was admitted that the instruments mentioned bore the genuine signatures of Charles and Leonee Desforges, respectively, and the fact that the money represented by the notes and referred to in the memorandum last mentioned was actually advanced by the father to the son to assist the latter in establishing himself in business was otherwise shown.
Opinion.
[1] I. In Succession of Kugler, 23 La. Ann. 455 (1871), it was held that a policy of insurance on the life of a man, in favor of his wife and children, vests the right to the policy in the beneficiaries from the date of its issuance. The question involved in the case thus cited was merely whether the widow and children, who were the beneficiaries of a policy of insurance for $1,000 upon the life of the deceased husband and father, were entitled to an additional $1,000 from his estate; the contention on their behalf being that at the moment of his death they were in indigent circumstances, and that the subsequent payment of the policy did not affect their rights,' as fixed by law, at that moment to demand $1,000 on that account.
In Succession of Hearing, 26 La. Ann. 326 (1874), the creditors of the decedent attempted to compel the widow to place upon the inventory certain policies of insurance upon his life which had been issued during the marriage, and of which she and his child were' the beneficiaries, as also a policy upon the life of a stranger which had been transferred to the decedent, and by him transferred to his wife; but the court held that they belonged to the beneficiaries and transferree, *56 and not to the succeession of the decedent, saying:
“The question we are called on to decide is whether these policies should be inventoried as part of Hearing’s estate, and thus made liable for his debts, or whether they belong to his wife and child. We think the latter. A policy of insurance is not a piece of property; it is the evidence of a contract, the contract being that a certain sum of money will be paid upon the happening of a certain event to a particular person named in the policy, or who may be the legal holder thereof. A creditor may have the life of his debtor insured, even without _ the consent of the debtor. A husband has the right, we think, to insure his life in the interest of his wife and child, as well as in the interest of his creditor, and his obligation to provide for them in case of his death is certainly well recognized. If the policy issues to the wife, or is properly transferred to her, the amount stipulated therein belongs to her when the event insured against happens, and she cannot be forced to inventory it as part of her husband’s estate.”