SOMMERVILLE, J.
Plaintiff, the widow of John M. Breard, sues defendant on a combination life insurance and endowment policy No. 398,972, issued by defendant April 16, 1891, on the life of said John M. Breard, wherein his wife, the plaintiff, was made the beneficiary, and which matured April 16, 1906, during the life of her husband.
The policy sued upon is termed a “guaranteed interest bond policy,” or an endowment policy, or a 15-year tontine dividend period bond policy, which was popular some years since. The contract was a combination of life insurance and endowment. Under the tontine system, the surplus, which in an ordinary policy is usually returned to the policy holders as an annual dividend, went into a fund called the “tontine fund,” the amount of which was credited to a particular class to which the policy belonged. When a policy lapsed, the reserve value became profits, and such profits went into the “tontine fund.” At the end of the tontine period the fund was divided among the surviving holders of the class; that is to say, the persistent policy holders. This tontine plan did not affect the instrument as a policy of insurance on life, but merely ingrafted thereon an endowment or profit-sharing feature. Under it the insured acquired no right to share in the surplus fund until the expiration of the tontine period, and the right to share in the fund did not become effective until the day after the last day of the period, and the beneficiary in the policy of'life insurance was not entitled to share in the tontine fund at all. Cooley’s Law of Insurance, 119 et seq.
Mrs. Breard was named specially as beneficiary of the life insurance. Ellison v. Straw, 119 Wis. 502, 97 N. W. 168.
The contract was between the insurer and the insured, and on the expiration of the period named in the policy the relation of debtor and creditor arose between them, and the surplus and annuity were plainly due under the terms of the contract to the insured. So was the amount of insurance at the expiration of 15 years, if he (Mr. Breard) were alive at that time, and if he elected to cancel the policy, and take the money. He also had the option of continuing that policy as a paid-up policy in favor of his wife. *777 And, although plaintiff in her petition claims a share in the tontine fund to the credit of her husband at the date of the expiration of 15 years, it is clear from the policy which was offered in evidence that she is not entitled to share therein; and it is inferred from the argument presented on the original brief filed in her behalf that she waives all claim to said surplus or tontine fund.
Plaintiff, in a second supplemental and amended petition, declares that s¡he sues upon the policy hereinbefore referred to, which matured 15 years after the date of its issuance, April 16, 1906, during the life of her now deceased husband; that he (her husband) undertook to advantage himself under the following provision of the contract of insurance, styled one of the optional benefits thereof, to wit:
“If the insured is living on the 16th day of April, in the year 1906, and if this bond policy is then in force, the premiums having been paid in full to that date, the insured shall be entitled to one of the following benefits: * * *
“(3) The surrender of this bond policy to the company for its cash value, which is hereby guaranteed shall not be less than twenty-five hundred and fifty dollars, and which shall in addition to that amount include the above defined surplus”
—referring to the surplus to be apportioned by the company to the bond policy.
Plaintiff further alleges that on April 13, 1906, three days before the policy matured, her husband wrote the defendant company advising it of his selection of settlement under the proposed optional benefit above quoted and that the defendant company on April 25th issued its check to her said husband in the sum of $2,710.15, in an attempted and alleged full settlement of its liability under said bond policy and optional benefit No. 3 thereof, that her said husband executed a receipt in full settlement in favor of said company in the sum of $3,252.15, but that that amount was not paid in full, and that the only sum received was $2,710.15, leaving a balance of $550 due on the said settlement. Petitioner then alleges that under a joint application by herself and her said husband defendant made a cash loan to them November 27, 1905, and that in the settlement with her said husband the defendant company withheld the sum of $550, represented by the amount claimed to be due under the loan agreement and loan just referred to. She then alleges that at the date of the loan her husband assigned the policy sued upon to the defendant for the purpose of securing the aforesaid loan of $550; and she alleges that the pledging of the policy by her husband for the purpose of securing said amount of borrowed money was illegal and in contravention of the prohibitive statute which rendered illegal the pledge of the property of a wife as security for the debt of her husband or the debt of the community. She alleges that the defendant company did not pay the sum of $550 to her husband on April 25,1906, when it attempted to make a settlement with him under the policy.
Plaintiff does not allege that the “loan” was not made at the time indicated; and the evidence shows that it was made on the joint application of herself and her husband, and that it was paid to her and him jointly by a check made in favor of both of them, and that the money was received by them on their joint indorsement of said cheek. This loan, as it is called, and which is represented by a policy loan agreement signed by plaintiff and her husband, promising to pay defendant the money borrowed, was in the nature of an advance on the policy made by the company. It was said by the Supreme Court of the United States in the case of Orleans Parish v. New York Life Insurance Co., 216 U. S. 517, 30 Sup. Ct. 385, 54 L. Ed. 597, that such loans are merely deductions from the sums that the insured and the beneficiary under the policy ultimately must pay. Such loans were there held to be payments, and not loans. In this case the company reserved *779 to itself the right of “deducting the amount due on said loan from the reserve on said policy computed according to the American Experience Table of Mortality,” etc., and said loan or payment is never made for a sum beyond the reserve value of the policy.
It was further stipulated, among other things:
“That said loan shall become due and payable: * * * (b) (1) On the maturity of the policy as a death claim or an endowment; (2) on the surrender of the policy for a cash value; (3) on the completion of any tontine or accumulation dividend neriod. In any such event the amount due on said loan shall be deducted from the sum to be paid or allowed under said policy.”
The plaintiff, as the beneficiary of the policy, had a vested interest therein; and she, as beneficiary, was a party to the contract of insurance; but the contract was not the ordinary life insurance policy. It was a combination of life insurance and endowment. If the husband died before the maturity of the policy, his widow was to be the sole beneficiary; but, if he did not die within the stipulated term of 15 years, then the endowment was to be paid to the husband. The wife therefore held only a contingent, interest. It depended upon the happening of the husband’s death within 15 years. The husband also had a contingent interest, depending upon his being alive at the maturity of the policy. They were both beneficiaries under the policy. The interests of both husband and wife were valuable, measured by the amount of premiums paid in. to the company. That interest could not be divested without the consent of the party owning it. And in this case the husband and wife, as beneficiaries, consented that an advance of $550 on the amount coming to them, or one of them, as insurance or endowment, should “be deducted from the sum to be paid or allowed under said policy.”
This advance payment by the debtor insurance company on the amount due plaintiff, the creditor, was not a contract under which the wife agreed to pay a debt of her husband, and therefore void under the law of Louisiana.
Under the ordinary life insurance policy, in which there is no reservation of a right to cut off or modify the interest of the beneficiary, the rights of the latter may not be divested without his or her consent. Cooley on Ins. vol. 4, p. 3755; Pilcher v. N. Y. Life Ins. Co., 33 La. Ann. 322; Putnam v. Insurance Co., 42 La. Ann. 739, 7 South. 602; Bliss on Life Insurance, § 348.
Here plaintiff, the beneficiary, gave consent in writing that the contract of insurance in her favor should be so modified as for her to receive an advance of $550 on the amount to become due to her under the policy, and she is bound under that same contract to permit it “to be deducted from the sum to be paid ox-allowed under said policy.”
Plaintiff further alleges in her petition, and correctly so, that at the date of the execution of the contract of insurance, on April 16, 1891, she became vested with the title to and an interest in the said life policy, which from the said moment of execution and issuance became her separate and indefeasible property, and that her husband and the defendant compaixy had ho control whatever over the same without her consent; that on April 16, 1906, as the beneficiary in interest, she was entitled to the benefits and advantages of any purported settlement by the company of its liability under said policy, that the settlement or attempted settlement made by her husband with the defendant company, to which she was not a party, is not valid, and “that she therefore is entitled to receive the full amount due under the said policy of the date April 16, 1906, or, alternatively, at the date of the death of the said John M. Breard, as originally alleged herein.” Aiid she prays for judgment in the sum of $3,260.15, with interest from April 25, 1906.
*781 Defendant answered that John M. Breard had taken advantage of the provision of the policy hereinbefore referred to, as he had a right to do, under the contract between the insured and insurer; that Breard had surrendered the bond policy for its cash value, and in addition to that amount had received from the defendant company the surplus to which the policy was credited; that said amount was $3,260.15, less $550 advanced by the company to said Breard and plaintiff during the existence of the policy. Defendant specially denies that plaintiff became vested with any title or interest of any kind or nature in the policy sued upon, or that it became her separate and independent property, and alleged that John M. Breard reserved to himself the right to change the beneficiary and to take advantage of the optional clauses contained in said policy should he be alive at the date of the maturity of the policy, when said optional rights also matured; further, that the only interest plaintiff had in said policy was conditioned upon said John M. Breard dying before he changed the beneficiary, or before the arrival of the time of the maturity of the options contained in said policy, or before he took advantage of any one of said options; that, as John Breard lived until the time of the maturity of the options contained in the policy, and took advantage of one of said options, and a full settlement was made with him by defendant, the defendant owes nothing whatever to plaintiff. It further denies that plaintiff was entitled to any benefits or advantages of any purported settlement by this company with the insured under said policy, or that she was a necessary party to any settlement thereunder, and it denies that she is entitled to receive any amount whatever under said policy.
There was judgment in favor of defendant, and plaintiff has appealed. She assigns as errors: ,
“First. The court erred in not' holding ‘that the policy and the money to become due under it, however arising, belong the moment it was issued to the person [plaintiff] named in it as beneficiary, and that there is no power in the person procuring the insurance by any act of his, by deed or by will, to transfer to any other person the interest of the person named.’ Washington Century Bank v. Hume, 128 U. S. 206, 9 Sup. Ct. 41, 32 L. Ed. 370; Succession of Desforges, 135 La. 49, 64 South. 978, 52 L. R. A. (N. S.) 689, and cases there cited.
“Second. The court erred in holding that the loan of November 24, 1905, to a husband and wife upon the security of the separate property of the wife was valid and binding, and that the wife in a proper action could not recover for such amount when the only payment of the same had been the illegal loan.
“Third. The court erred in not holding that the ‘benefits, provisions, and requirements’ providing and detailing the plan of settlement and the termination of the endowment period created an alternative obligation to be discharged by the debtor under the provisions of the policy, with the privilege given to the creditor to select, within a stated and limited time, the benefit to be conferred; in not holding that the contract itself selected and fixed the benefit to be conferred in the event of the failure of selection by the insured, within a stated and limited time therein provided.
“Fourth. The court erred in not holding that, the creditor of an alternative obligation (that is, John M. Breard, insured) having failed to avail himself of the privilege of selecting within the time allotted to him by the debtor how the obligation should be discharged under the contract for such election, and the debtor and creditor (that is, New York Life Insurance Company and John M. Breard) having selected by contract, a certain benefit, in the event of the failure of the creditor to make selection within the stipulated time, such benefit being in favor of the beneficiary of the contract, the plaintiff here, that the contract itself vested, if it had not been vested at the original issue of the policy, an indefeasible right to all proceeds, however arising under the policy, in the sole beneficiary thereunder.”
• [1-3] It has been observed that the policy involved in this case was not the ordinary life policy, payable only on the termination of the life of the insured, but. that it was a combination of a life policy and an endowment contract; the endowment being payable to the insured at the end of 15 years, if the insured was alive at that time, or sooner if the insured should die sooner, when the face value of the policy was to be paid to the beneficiary named therein, the plaintiff in this *783 cause. The insured having lived during the 15 years, the term that the policy was to run he was entitled, under the terms thereof, to continue the policy without the payment of further premiums, or to surrender the policy and receive the face value thereof in cash, together with any surplus that might he due on said policy.
[4] “It is indeed the general rule that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance by any act of his, by deed or by will, to transfer to any other perscra the interest of the person named.” Washington Central Bank v. Hume, 128 U. S. 195, 206, 9 Sup. Ct. 41, 44, 32 L. Ed. 370; Pilcher v. N. Y. Life Ins. Co., 33 La. Ann. 322; Putnam v. Insurance Co., 42 La. Ann. 739, 7 South. 602.
[5] The policy sued upon by plaintiff contains four “optional benefits.” The first two provide for a continuance of the policy already in existence, and the last two for a surrender thereof. They are as follows:
“If the insured is living on the 16th day of April in the year nineteen hundred and six, and if this bond policy is then in force, the premiums having been paid in full to that date, the insured shall be entitled to one of the following benefits:
“(1) The continuance of the bond policy, which then becomes a paid-up insurance, payable at the death of the insured, together with an annual income during the life of the insured of one hundred and eight dollars and ninety cents per annum (being equal to 4 per cent, of the total amount of annual premiums paid), the first payment of said income to be made to the said insured, if living, on the 16th day of April, nineteen hundred and seven, and an equal payment to be made annually thereafter, provided the said insured shall be living when such annual payment becomes due, and, in addition, the conversion of the surplus then apportioned by the company to this bond policy into a life annuity, payable together with the income above guaranteed.
“(2) The continuance of this bond policy, guaranteeing a paid-up insurance and an annual income as specified in benefit ‘1,’ and the withdrawal in cash of the above-defined surplus.
“(3) The surrender of this bond policy to the company for its cash value, which is hereby guaranteed shall not be less than twenty-five hundred and fifty dollars, and which shall, in addition to that amount, include the above-defined surplus.
“(4) The surrender of this bond policy, and the conversion of its cash value, as above defined, into an annual income during the life of the insured, payable in like manner as provided in benefit T,’ it being hereby guaranteed that the annual amount of such income shall not be less than two hundred and twelve dollars and eighty-three cents.
“Provided, however, that the insured shall notify the company, in writing, not less than three months before the first named date above, vvhich privilege is selected, and that in default of such notice benefit T shall be considered selected.”
The question for decision in this case is: Was Mrs. Breard the beneficiary of the policy at the time of its maturity and at the time of the settlement thereunder. between the insurer and the insured? If she was, the settlement with Mr. Breard, the insured, was made illegally by him and defendant.
If the policy lapsed at the date of its maturity, April 16, 1906, and if it was legally surrendered by John M. Breard, the insured, after that date, and he received the amount of said policy with the surplus due thereon, then Mrs. Breard cannot claim anything under it.
But plaintiff contends that the policy did not mature on April 16, 1908; that it was continued prior to that date as a paid-up policy, with her as the beneficiary; that her husband and the defendant company could not enter into any settlement under it to which she was not a party; and that the alleged settlement was null and void as to her.
Plaintiff shows, under the terms of the policy, that her husband did not exercise the right of option of any benefit at the time agreed upon in said policy, and that a subsequent acceptance or adoption by him of the third optional benefit was not a valid acceptance, because made at a time when he had no right to accept it; that he could not at that time enter into a contract with the *785 defendant to pay him any money or endowment fund under the paid-up policy of life insurance wherein she was the sole beneficiary.
The law of the case is found in the contract itself. It provides that:
“If the insured is living on the 16th day of April, in the year nineteen hundred and six, and if this bond policy is then in force, the premiums having been paid in full to that date, the insured shall be entitled to one of the following benefits: [Naming the before-mentioned four “optional benefits,” with this proviso:] Provided, however, that the insured shall notify the company, in writing, not less than three months before the first-named date above (April 16, 1906), which privilege is selected, and that in default of such notice benefit ‘1’ shall be considered selected.”
The evidence shows that the insured did not notify the company three months before April 16, 1906, which one of the four “optional benefits” he selected, and it was agreed and stipulated in the contract “that in default of such notice benefit T’ shall be considered selected.” Therefore benefit “1” was “considered selected”; that is, it was selected by the insured, and it was fixed and settled upon by the parties as the contract between them. And “the existing bond policy then became a paid-up insurance; the policy payable at the death of the insured to “Azema Breard, wife of the insured,” the plaintiff. It was continued in full force. It was not surrendered.
The proviso attached to the “optional benefits” makes it certain that the insured and the insurer, when the former failed to make a selection not less than three months before the maturity of the policy, decided to continue the policy which named plaintiff as the beneficiary thereof as a paid-up policy; and the insured and the insurer had no more right to interfere with that policy, the separate, paraphernal property of the plaintiff, than they had to interfere with any other property belonging to her. Mr. Breard originally caused the policy to issue in favor of his wife, payable to her in the event of his death within 15 years; and he subsequently continued the same policy in her favor, payable at his death.
The case under consideration is not unlike that entitled Pilcher v. New York Life Ins. Co., 33 La. Ann. 322. There Mr. Pilcher had taken out a policy in favor of his wife, Mrs. Pilcher, and the insured and the insurer agreed to permit said policy to lapse, and to issue a new policy bearing the same number as the one formerly issued; but the latter was made in favor of Mr. Pilcher himself, instead of his wife. Here the insured and the insurer entered into a contract whereby the policy which had been issued with Mrs. Breard as beneficiary, and which had been continued in full force, was canceled, and a new agreement was entered into between the defendant and the insured whereby the latter received the face value of the policy, together with the surplus due thereon. In the suit of Mrs. Pilcher on the original policy, after the death of her husband, the court held that the policy was her exclusive property, and that the change of the beneficiary therein without her consent was not binding upon her. It was there held that the original policy had never lapsed; that the new policy, as to Mrs. Pilcher, was not a new policy, but merely a continuation of the original one. Our jurisprudence recognizes the right of the beneficiary wife quite as amply as do the statutes of other states; and a judgment was rendered in favor of Mrs. Pilcher and against the insurance company in that case for the amount of the policy of which she was the beneficiary originally.
[6] In the case of Putnam v. Insurance Co., 42 La. Ann. 739, 7 South. 602, it was held that the company’s contract as to the wife was complete in its incipieney, and never changed thereafter, with her consent, and that the change in the beneficiary by the husband, the insured, did not affect the policy in so far as the original beneficiary was con *787 cerned. The Pilcher Case was affirmed; and the general doctrine as formulated in Bliss •on Life Insurance was quoted, to this effect:
“Sec. 348. It will be perceived that, in all these cases, the principle is maintained that no person other than the persons designated in the policy can assign or surrender it, and that in •such assignment or surrender all the persons must concur, or the interest of those not concurring is not affected.”
Mrs. Breard, in this case, not only did not concur in the surrender of the policy which had been continued with her as beneficiary, hut denies that it was surrendered with her knowledge or consent.
[7] The original policy having named Mrs. ' Breard as the beneficiary, her acceptance thereof is presumed in law; and her acceptance of the continued policy is also presumed. The obligations of the defendant thereunder was to pay to her, and her alone, upon the happening of the event which matured the policy; that is, the death of her husband, the insured.
The Pilcher and Putnam Cases, supra, are affirmed in the case of Lambert v. Penn Mutual Ins. Co., 50 La. Ann. 1027, 24 South. 16; and the same principle is announced in the Succession of Desforges, 135 La. 49, 64 South. 978, 52 L. R. A. (N. S.) 689. In the latter case the policy of insurance, which was an endowment policy, was not in evidence; but the court presumed from the evidence in the •case that the policy had named the wife as the beneficiary, as is usual in ordinary life insurance policies. In evidence was a written declaration of the husband that the money collected by him under said policy was—
“the cash surrender value of a paid-up policy ■on my life, taken out for her [his wife’s] personal and exclusive benefit. Which amounts, as above, I hereby acknowledge to be her separate and exclusive property, and by these presents pledge to her the annexed certificate of stock in J. & M. Schwabacher, Ltd., as security to her for the same.”
[8] It is argued on behalf of the defendant company that the proviso to the effect “that the insured shall notify the company, in writing, not less than three months before the first-named date above, which privilege is selected, and that in default of such notice benefit T’ shall be considered selected,” is a provision purely in the interest of the insurance company to protect it from a sudden demand on the part of the insured for the cash value of the policy at the time of its maturity, together with the surplus due thereon, which condition might be waived by the defendant company. But, as has been seen, the rights of Mrs. Breard, a third person, had attached under this proviso. She was the beneficiary in the original policy, which named her as such, and it had been continued in full force and effect as^ a paid-up insurance contract. Her rights could not be affected by any indulgence or contract which the insurer might see fit to make to or with the insured, without the beneficiary, the real party in interest, consenting to such indulgence or contract. The law is settled that the beneficiary cannot be changed by any contract between the insured and the insurer.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there be judgment in favor of plaintiff and against defendant in the sum of $2,500, with interest from March 25, 1911, subject to a credit of $550, with 5 per cent, interest from November 27, 1906, with costs in both courts.