In my opinion, the value of the War Savings Bonds involved in this case and admittedly purchased with funds belonging to the community existing between the deceased and his surviving widow should be inventoried in the succession, and the one-half interest of the deceased in the proceeds or value of these bonds transmitted to the surviving widow and the mother by inheritance should be calculated in fixing the amount of the inheritance tax due the *Page 646 
State by this succession as was done by the trial court. Act No., 127 (Ex.Sess.) of 1921 levies a tax on all inheritances in this State, where the value of the inheritance is above certain exemptions mentioned in the Act. The tax is not levied on any specific property, but is calculated and collected on the value of the inheritance transmitted to the heir.
At the death of Tanner there was transmitted to his surviving widow and his mother his one-half interest in all the community property, which included the value of his half interest in the bonds which merely stood in the place of and represented the community funds with which they were purchased. Article 2405 of the Civil Code provides: "At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given to them separately, or which they have respectively inherited."
The ground on which the majority opinion holds that there was no inheritance devolving on the widow and mother with respect to these bonds is that the bonds were the separate property of the surviving widow and formed no part of the community because of a regulation of the Treasury Department of the United States under which the bonds were issued to the effect that the Treasury Department will recognize the surviving co-owner as the sole and absolute owner where the bonds are registered in the joint names of two persons, and payment will be made only to the survivor.
In my opinion, there are at least four reasons why this regulation of the Treasury Department of the United States does not and cannot deprive the State of its right to collect an inheritance tax due by the widow and mother on the value of the interest inherited by them from the deceased in these bonds. Each of these reasons will be discussed separately.
(1) The regulation must be interpreted in the light of the purpose to be accomplished, to facilitate the transferability and redemption of the bonds issued thereunder so that the Government would not be handicapped in fixing the terms of the bonds and in paying the proceeds to a registered holder as a full release and cancellation of the bonds without first having to determine by some legal proceeding the person legally entitled to receive the proceeds and receipt therefor. The provision in the regulations that the Treasury Department will recognize the surviving co-owner as the sole owner and payment will only be made to him, only means and can only mean that insofar as the Treasury is concerned it will not go into the question of determining whether or not such survivor is legally entitled to the proceeds as owner, but that he will be recognized as owner by the Government insofar as a release and acquittance of all further liability under the bonds is concerned. It was not intended nor would it be necessary for the regulations to go beyond this and follow the proceeds of the bonds after they were paid and cancelled and undertake to declare and decree by a mere regulation of a Department of the Federal Government who would be the owner of these proceeds.
As was said in the case of Decker v. Fowler, Adm'r, 199 Wn. 549,92 P.2d 254, 131 A.L.R. 961, it was no concern of the Federal Government to whom the money might belong after it was paid to redeem the bonds. As was said in that case in a concurring opinion, neither Federal statutes nor the rules and regulations promulgated by the Federal department can render inoperative state laws governing the administration of the estate of a deceased citizen of that state, nor affect the distribution of his property to the persons entitled to the same under the state laws. In that case, the court held that the registered beneficiary had a right to collect the bonds and the state could not interfere with the right of the Government to pay her the proceeds under the regulations, but that did not make her the owner of the proceeds. In the cited case, the court referred to the case of Warren, Executrix, v. United States, 68 Ct.Cl. 634, cited by the majority opinion in the present case, and the court reached the conclusion that the Warren case does not hold that the beneficiary entitled to collect the bonds was entitled to the money in absolute right. I think that is the correct holding in the Warren case, and is about as far as some of the other cases cited in support of the majority opinion go, that is in holding that the holder or beneficiary of the bonds has the right to collect them, and no other person can collect them, as the government will not recognize any other person's right to collect and receipt for the proceeds. In my *Page 647 
opinion, that is all that the regulation means and that is as far as it goes.
(2) If it should be held that the regulations of the Treasury Department do have the effect of following the proceeds of the bonds and placing full ownership in the surviving co-owner, regardless of the actual ownership of the proceeds under the laws of the state, then the regulations go beyond the authority delegated by Congress to the Secretary of the Treasury. 31 U.S.C.A. § 757c. The Secretary of the Treasury is given authority, with the approval of the President, to issue from time to time United States savings bonds to meet any public expenditures authorized by law, the bonds to be in such forms, and shall be issued in such manner and subject to such terms and conditions
consistent with the subsections following, "and including any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe." We search in vain in the authority delegated to the Secretary of the Treasury for any provision in the act of Congress giving him the right to declare who shall be the owner of the proceeds of these bonds when they are redeemed and the money paid to the holder (assuming that Congress has such authority, which I think it does not possess as will appear from what is said under the next topic). The terms and conditions in the bonds which the Treasurer is authorized to fix evidently refer to such provisions in the bonds as will make them uniform, facilitate their transfer, the manner of their payment, and the person or persons to whom they are to be paid. There is quite a difference in provisions of this kind which are intended to make the bonds uniform, safe and attractive as an investment, and a regulation issued by a Federal department which undertakes to change the ownership, descent and distribution of the property under the laws of the state. As was said in Matter of Karlinski's Estate, 180 Misc. 44, 38 N.Y.S.2d 297, 40 N.Y.S.2d 22, 43 N.Y.S.2d 40, a restriction on the transferability of a United States savings bond is a "condition" of the bond, whereas a regulation of the Treasury Department fixing property rights in the proceeds of the bond at the time of receipt by the payee is not a condition and transcends the power conferred by Congress.
(3) If it is assumed that the regulations do extend to fix the ownership in the proceeds of the bonds and Congress delegated to the Treasury Department the right to make such a regulation, then it is my opinion that Congress does not have the power to delegate such authority by reason of the power conferred upon it to borrow money and issue bonds therefor. There is no reasonable relation in the power to borrow money and issue bonds for its payment, and the power to pass laws regulating the ownership, descent and distribution of the funds with which these bonds are purchased, this latter power being reserved to the states. Neither is it necessary in the exercise of the power delegated to Congress to borrow money that it direct the ownership of the funds repaid to the lenders who have purchased the bonds issued by the Federal government to carry on its legitimate functions. It could hardly be claimed that because Congress has been given authority to regulate interstate commerce, that it would have the power, for instance, to declare that all funds earned by employees engaged in interstate commerce should be their separate property and not fall into the community where the employee is a married man, as is now the law in this State. Nor could it hardly be claimed that a department of the Federal government having charge of the national banking system, or the guarantee of deposits in banks, could, under a delegation by Congress of the authority in such department to make rules and regulations governing such business, make a regulation declaring that the funds on deposit in any of such banks in the joint names of two depositors would be paid to the survivor who would become the owner of the funds so paid.
(4) And, finally, the right of the State to impose a tax on inheritances based on its laws of ownership and devolution of property cannot be impaired by the regulations of a Federal department having no reasonable relation to the supreme powers vested in the Federal government. The states also have taxing powers for the purpose of carrying on their governmental functions, and these powers cannot be destroyed or subordinated, unless it is necessary in the exercise of Federal authority within the area of government delegated to and necessarily implied in the grants of power to the central government.
As a kind of alternative basis for its conclusion that these bonds are the separate property of the surviving widow and no interest of the deceased husband in them *Page 648 
passed to his heirs, the majority opinion considers the situation analogous to the proceeds of a life insurance policy taken out by the husband on his life with his wife as beneficiary and the premiums paid out of community funds, in which case the courts hold that the proceeds of the policy constitute the separate property of the wife and no part of the proceeds fall into the succession of the husband. It must be conceded that these decisions do constitute an exception to the law relative to the presumption of the community status of the effects which both husband and wife reciprocally possess at the dissolution of the marriage. A study of the decisions making this exception to the community property rule will show that the exception has never been fully justified with very satisfactory reasons. The rule seems to have begun with the Succession of Hearing, 26 La. Ann. 326, where the holding was based on the fact that a life insurance policy is not a piece of property, but the evidence of a contract whereby a certain sum of money will be paid on the happening of a certain event. The court then goes on to say that where the wife is the beneficiary and the event happens which makes the stipulated amount payable to her, the proceeds belong to her and do not have to be inventoried in the husband's estate. The ruling seems to be based largely on the peculiar nature of an insurance contract and the need of some means for the protection of the wife. In that case, Chief Justice Ludeling wrote a very strong dissenting opinion in which he took the view that the proceeds of the policy constituted a community asset, and the holding to the contrary had to be based on the view that a life insurance policy is an exceptional contract.
Having established this rule, it was followed in several subsequent decisions, in some instances without any further effort to give a reason for the exception, while in some of the cases conflicting reasons were given and then changed. In some of the cases, the rule is justified on the ground that the insurance is a gift from the husband to the wife; but this reason is no longer assigned as a basis for the rule. Sizeler v. Sizeler, 170 La. 128, 127 So. 388. In other cases, the rule is said to be based on a stipulation pour autrui, and then the contract of insurance whereby the proceeds payable to the wife on the death of her husband as insured, is classed as innominate. The rule has latterly been looked upon as settled jurisprudence, and as such, a rule of property. See Succession of Desforges, 135 La. 49, 64 So. 978, 52 L.R.A., N.S., 689, for a full discussion of this question.
If the bonds involved in this case can be considered as the separate property of Mrs. Tanner because of an agreement entered into by her husband to make them so after his death, then there would seem to be no reason why a husband could not deposit community funds in a bank in a joint account with his wife with an agreement with the bank to pay the deposit in the joint account to his surviving widow on his death, and specify in the agreement with the bank that the funds would be paid to her as sole owner, and thereby make these funds her separate property and no part thereof subject to any inheritance tax on the death of the husband. In my opinion, the effect of the community property law of this State cannot be nullified in any such manner.
The ownership of the proceeds of the bonds in this case and the transmission of that ownership by inheritance is the same as would have been the case had these community funds of $54,900 been deposited in a bank in this State in the joint names of Mr. and Mrs. Tanner, payable to either or to either survivor. In such a case, the bank owing the amount of the deposit on the death of either joint depositor could have paid the deposit to the survivor, and so far as the bank was concerned, it would have been relieved of further liability, regardless of the fact that the fund would have remained a community asset and one half thereof would have passed by inheritance to Mrs. Tanner and her mother and would have been subject to the inheritance tax imposed by the State. For the purpose of paying the deposit to the survivor the bank would have been authorized to consider the survivor the owner and would have been fully discharged from further liability. Act 188 of 1908. But the payment of the amount of the deposit to the survivor would not affect the ownership of the money so paid. Northcott v. Livingood et al., La. App., 10 So.2d 401.
My only justification for writing these rather lengthy views is the importance of the questions involved. The ownership, descent and distribution of millions of dollars worth of bonds held by citizens of this State and thousands of dollars in inheritance taxes due the State will be affected if the majority opinion prevails. *Page 649 
For the reasons above given, I think the judgment appealed from should be affirmed, and respectfully dissent from the opinion and decree being handed down in this case which amends that judgment by holding that no interest in these bonds passed by inheritance.