271 So.2d 308 (1972)
Odette Andrus MOREIN, Plaintiff-Appellee,
v.
NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, Defendant-Appellant.
No. 4013.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1972.
Rehearing Denied January 24, 1973.
Writ Refused March 15, 1973.
*310 Gist, Methvin & Trimble, by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellant.
Harold J. Brouillette, Marksville, for plaintiff-appellee.
Before FRUGÉ, HOOD and MILLER, JJ.
HOOD, Judge.
This is an action instituted by Mrs. Odette Andrus Morein to recover the proceeds of a life insurance policy issued by defendant, North American Company for Life and Health Insurance, insuring the life of plaintiff's son, Joseph Byron Morein, now deceased. Judgment was rendered by the trial court in favor of plaintiff. Defendant appealed.
The principal question presented is whether the insured, prior to his death, properly changed the beneficiary named in the policy from his estranged wife, Helen Jane Soileau Morein, to plaintiff, Mrs. Odette Andrus Morein.
The evidence shows that on January 9, 1970, the defendant company, acting through its agent, Milton Gellar, issued a decreasing term life insurance policy to Joseph Morein, insuring his life in the amount of $15,000.00. The original beneficiary named in the policy was the insured's wife, Mrs. Helen Jane Soileau Morein, with whom he was living at the time the policy was issued. On June 19, 1970, the insured and his wife discontinued living together. A suit for separation was filed, and on September 22, 1970, a judgment of separation from bed and board was rendered in that suit. On the day that judgment was rendered the parties entered into a community settlement agreement, and pursuant thereto Morein executed and delivered to Mrs. Helen Jane Morein a promissory note for $4,000.00.
On or shortly before August 13, 1970, while Morein and his wife were living apart from each other, Morein notified defendant's agent, Gellar, that he wished to change the primary beneficiary in the policy from his wife to his mother, Mrs. Odette Andrus Morein, and that he wished to name his three children as contingent beneficiaries. The policy provides that a request for change of beneficiary must be in written form, and one of the factual issues presented in this case is whether the request which Morein made for change of beneficiary was communicated to Gellar orally or in writing.
On August 13, 1970, Gellar telephoned defendant's home office and informed a company official there of the fact that the insured desired to make this change of beneficiary. The home office thereupon promptly forwarded to Gellar a supply of "Change of Beneficiary" forms, with instructions that one of those forms was to be completed, witnessed and returned to the home office. It assured Gellar that as soon as the form was received, properly completed, the records of the company would be adjusted.
On September 1, 1970, the defendant company again wrote to Gellar, informing him that it had not received the Change of Beneficiary form from Morein, and advising that if it did not receive the completed form within the next ten days, it would assume that the insured no longer desired to make such a change. The Change of Beneficiary form was never completed or returned to the insurance company.
The insured, Joseph Byron Morein, died on January 8, 1971. Following his death, a proof of claim was submitted to the insurer by the beneficiary named in the policy, Mrs. Helen Jane Morein, and on April 29, 1971, the company paid to that beneficiary, Mrs. Helen Jane Morein, the proceeds of the policy, amounting to $15,000.00.
*311 The policy was in the possession of the insured's three surviving children at the time of his death. There was some animosity between the children and their mother, but the children nevertheless voluntarily delivered the policy to their mother, Mrs. Helen Jane Morein, so that she could surrender it to the company upon payment of the proceeds of the policy to her. The policy was surrendered to the company when the payment was made.
Shortly after that payment was made, Mrs. Helen Jane Morein made demand upon the heirs of the decedent for payment of the $4,000.00 promissory note which Joseph Byron Morein had given to her in connection with the community settlement agreement. The children consulted an attorney relative to that claim, and in discussing the matter they told the attorney that they had learned from Gellar that their father had written a letter to Gellar in July or August, 1970, advising that he wished to change the beneficiary in his policy from his wife to his children, and that Gellar had failed to comply with the insured's wishes. The attorney thereupon wrote to the defendant company, giving defendant that information and requesting that the company provide him with a copy of the "letter" which Morein had written requesting that the beneficiary be changed. Another letter substantially to the same effect was written by the attorney to the insurer on May 27, 1971.
The defendant company advised the attorney for the children of the decedent by letter, dated June 14, 1971, that it had received no letter or written request for a change of beneficiary, that it had received only a telephone call from Gellar on August 13, 1970, advising that the insured had indicated a desire to change the beneficiary to his mother, Odette A. Morein, and that the company thereupon forwarded the necessary forms to Gellar for completion. The company also advised the attorney that it sent a follow-up letter to Gellar on September 1, 1970, but that no written request for a change of beneficiary was ever received, and that such a change thus was never effected.
The attorney then advised the insured's three children that they had no claim to the proceeds of the policy, since the insured apparently had never requested, either orally or in writing, that they be named as beneficiaries. The children thereupon gave their grandmother, Mrs. Odette Andrus Morein, the information which they had obtained from the defendant company relative to a request for change of beneficiary. The insured had never discussed the matter with his mother, and she did not know until this information was given to her that the insured had ever considered naming her as the primary beneficiary in the policy. This suit was instituted by the decedent's mother on September 10, 1971.
At the trial officers or agents of the defendant insurance company testified that no written request for a change of beneficiary was ever received at the home office of the company, that an officer of the company received a telephone call from Gellar on August 13, 1970, advising that the insured desired to change the beneficiary named in the policy, that he then sent Change of Beneficiary forms to Gellar, but that no completed forms were ever returned to the company. Officials of the company also stated that the first knowledge received by anyone in the home office that there were other claimants to the policy proceeds besides the named beneficiary, Mrs. Helen Jane Morein, was upon receipt of the letter written on May 21, 1971, by the attorney engaged by the decedent's children.
The record contains a penciled memorandum which appears in the files of defendant company relating to the Morein policy, which memorandum reads, in part, as follows:
"Per phone call received from Agent, Milt Gellar, the following should be typed as a beneficiary change.

*312 NEW: PRIMARY, ODETTE A. MOREIN, mother. CONTINGENT, LAUREN JUNE FONTENOT, daughter, DEBBIE ANN MOREIN, daughter, JOSEPH B. MOREIN, JR., son, share & share alike.
Call taken 8-13-70."
Gellar testified that he does not recall whether he received a letter or an oral request by Morein for a change of beneficiary. He stated that he has searched his office and finds no such letter, but that if he had received such a letter he would have forwarded it directly to the company. He acknowledges that he received the Change of Beneficiary form from the company, and he stated that he made several attempts to contact Morein to have it executed, but that he was unable to get the form completed. He succeeded in contacting Morein once, but the latter said he did not have time to discuss the matter then. He made an appointment with Morein to complete the form at a later time, but he said that Morein failed to show up for that appointment. He stated that he tried to contact the insured by telephone several times, but was unable to do so, so he eventually mailed the Change of Beneficiary form to Morein, with the letter which Gellar had received from the company, and with a personal note from Gellar asking him to complete the form and return it to him. The form was never completed or returned to Gellar or to the company.
Two of the decedent's children and the father-in-law of one of them, J. C. Nicholson, testified that shortly after Morein's death Gellar informed them that the insured had written a letter to him requesting that the beneficiary be changed in the policy. All of these witnesses were under the impression that the insured wanted to change the beneficiary from his estranged wife to his three children. They testified that Gellar offered to forge the signature of the insured on a Change of Beneficiary form in order to assist them in obtaining the proceeds, but that the children refused to permit him to do so. Gellar admits that he talked to the children and to Mr. Nicholson after the death of the insured, but he stated that he did so in an effort to help them settle their dispute with Mrs. Helen Jane Morein relative to the indebtedness which the latter claimed was owed to her by the estate. He concedes that he told them that Morein had indicated that he wanted to change beneficiaries, but he denies that he ever informed them that the decedent had written a letter requesting a change of beneficiary, or that he wanted to name his children as beneficiaries. He denies that he offered to forge the name of the decedent to any document.
One of the insured's children testified that Morein, while visiting in her home during the latter part of July or August, 1970, telephoned Gellar's office to advise him that he wanted to change the beneficiary named in the policy. She stated that Gellar was not in, but that her father left a recorded message asking Gellar to get in tough with him because he wanted to change the beneficiary in his policy. Gellar stated that he has a device in his office which enables a person who calls by telephone to record a message when no one is present to answer the phone.
The trial judge found that Morein submitted a request in writing that the beneficiary in the policy be changed from his estranged wife to his mother, but that this request was never submitted in written form to the home office of the defendant insurer. He concluded that under those circumstances, and in view of the terms of the policy and the provisions of LSA-R.S. 22:643, plaintiff could not recover in contract as the beneficiary named in the policy. The trial judge also concluded, however, that although plaintiff could not recover "on the policy," she was entitled to recover from defendant on an alternate demand "sounding in tort," based on the negligence of defendant's agent, Gellar, in failing to consummate the requested change of beneficiary before the death of *313 the insured. Judgment thus was rendered condemning defendant to pay plaintiff damages in the sum of $15,000.00, that being the face amount of the policy.
The policy issued by defendant insuring the life of Morein contains the following provision:
"Every request for change of beneficiary must be in written form satisfactory to the company and shall take effect as of the date of such request, but only upon receipt of the request at the home office of the company whether or not the insured is then living; provided that the liability of the company shall be discharged to the extent of any payment made prior to such receipt and shall not be increased by reason of such change." (Emphasis added).
Under the provisions of the policy, in order for a request for a change of beneficiary to be effective, it must be in written form and it must have been received at the home office of the company.
We are not convinced that the request made by Morein for a change of beneficiary was made in writing. The only evidence we find in the record which tends to show that such a letter ever existed is the testimony of three witnesses to the effect that Gellar told them several months later that such a letter had been received by him. Gellar does not recall receiving any such letter, nor does he recall telling anyone that he had received a written communication from Morein. The home office of the insurer never received a written request of any kind. No one has ever seen such a letter, or even a copy of it, and no one has acknowledged receipt of any such written communication. The fact that Morein telephoned Gellar and left a recorded message for Gellar to get in touch with him about the desired change indicates that Morein's request was made by personal contact or by telephone, rather than by letter. Even if we assume that such a letter was written to Gellar by Morein, the letter described by all witnesses who indicated that it had been written would not benefit plaintiff in this case. We would have to depend upon the testimony to show the contents of the letter, since the letter itself is not available and has never been seen by a witness, and the only testimony relating to its contents is to the effect that Morein stated that he wanted to name his children, rather than the plaintiff, as beneficiaries under the policy. The children are not parties to this suit, and they do not claim to be beneficiaries.
The evidence establishes, however, and the trial judge correctly found, that no written request for a change of beneficiary was ever sent to or received by the home office of defendant company. The policy provides that such a change does not become effective unless and until it is received in the home office. Under those circumstances, it is immaterial whether Morein advised Gellar orally or by letter that he wanted to change the beneficiary named in the policy. The request, even if it had been submitted in written form, did not become effective since it was never received by the home office of the defendant.
In New York Life Insurance Company v. Murtagh, 137 La. 760, 69 So. 165 (1915), the policy stipulated that a change of beneficiary could be effected ". . . by filing written notice thereof at the home office of the company, accompanied by the policy for suitable endorsement thereon." A written request for a change of beneficiary and the policy were delivered to the local branch office of the defendant company three weeks before the insured died, but neither that written request nor the policy was received by the home office before that time. Our Supreme Court, after citing Article 1901 of the Civil Code, which provides that agreements legally entered into have the effect of laws on those who have formed them, held that a change of beneficiary had not been effected.
*314 In Douglass v. Equitable Life Assurance Society, 150 La. 519, 90 So. 834 (1922), the Supreme Court said:
"It is the settled jurisprudence that, where a policy is made payable to a certain beneficiary, his interest can only be divested in favor of another beneficiary by the insured changing the contract in the manner which the contract points out that it must be changed to effect that result. . ."
And, in Giuffria v. Metropolitan Life Insurance Company, 188 La. 837, 178 So. 368 (1938), a correctly executed Change of Beneficiary form had been sent by the local agent to the home office of the insurer, but the policy was not forwarded to the home office before the insured died. The policy provided that the change of beneficiary would not be effective unless and until it was endorsed on the policy. The Supreme Court, in holding that a change of beneficiary had not been effected, said:
"It will be observed that the policy expressly provides that no change of beneficiary shall be effective unless and until it is indorsed on the policy at the home office of the insurer. The parties having agreed to that contractual provision, the courts of this state are bound to recognize and enforce the agreement as the law of the contract. Until that condition is fulfilled, a change of beneficiary is not effected."
These cases indicate that in this state a change of beneficiary in a life insurance policy ordinarily will not be effective unless there has been a strict compliance with the policy requirements as to such change. Jurisprudence to that effect may have developed because in Louisiana the wife who is named as beneficiary in a policy issued to her husband is recognized as having a property interest in that policy, and courts are reluctant to divest her of that interest unless there has been a strict compliance with the provisions of the policy. Couch on Insurance 2d, Sec. 28:73; Douglass v. Equitable Life Assurance Society, supra; Breard v. New York Life Insurance Company, 138 La. 774, 70 So. 799 (1916). In the Douglass case, the court said:
"We deem it unnecessary to review the many decisions of the other states cited in the briefs, for it is well settled in this state that the wife named as the beneficiary in a policy on the life of her husband has a property right therein, which can only be divested in the manner prescribed by the terms of the policy; and, if those provisions are not complied with, her rights remain unaffected."
In the instant suit the policy stipulates that a request for change of beneficiary must be in written form, and that it will take effect "only upon receipt of the request at the home office of the company." It also provides that the liability of the company shall be discharged to the extent of any payment made prior to such receipt. The payment shows that a written request for a change of beneficiary was never received by the home office of defendant, and the change thus never became effective. The defendant company made payment of the face amount of the policy to the beneficiary named therein, prior to the receipt of a written request for a change of beneficiary, and thus under the terms of the policy the company is discharged to the extent of the payment made.
Plaintiff contends that Louisiana has adopted a more liberal policy than that expressed in the above cited cases in implementing the "intent" of the insured to change the beneficiary named in the policy. She cites several cases to support that argument. We do not consider any of those cases to be applicable here.
In Kimbal v. National Life and Accident Insurance Company, et al., 8 La.App. 228 (Orl.1928), for instance, the court found that there was no proof in the record as to *315 the provisions of the policy relating to a change of beneficiary, and that the Murtagh case thus was not applicable.
In Ahrens v. First National Life, Etc., Insurance Company, 6 La.App. 661 (Orl. 1927), the insured had done everything in his power to effect a beneficiary change, but the initial primary beneficiary refused to surrender the policy for endorsement. The court cited with approval the following statement from R.C.L. Vol. 14, Sec. 556:
"If the member does all that is within his power to effect a change in beneficiaries and fails to surrender the certificate. . . . only because such certificate is in the possession of the original beneficiary who refused to surrender it, the beneficiary thus thwarting the wishes of the member will not be allowed to profit thereby, and his rights to the proceeds of the certificate are subordinate to those of the new beneficiaries selected by the member."
Substantially the same issue was presented and the same result reached in Smith v. American National Insurance Company, 25 So.2d 352 (La.App. 2 Cir. 1946).
In Wickes v. Metropolitan Life Insurance Company, 170 So. 48 (La.App.Orl. 1936), and Louisiana Industrial Life Insurance Company v. Tillman, 171 So. 583 (La.App.Orl.1937), each policy involved contained a "facility of payment clause." In each case the court specifically distinguished the issues presented there with the issues determined in the Murtagh case where there was no such clause. There is no facility of payment clause in the policy presently before us.
We do not feel that the above cited cases modify or change the rule which we applied in New York Life Insurance Company v. Murtagh, supra. On the contrary, the Murtagh case was cited with approval and was then distinguished in some of these cases.
The Louisiana Facility of Payment Statute (LSA-R.S. 22:643) also is applicable here. The statute provides:
"Whenever the proceeds of, or payments under a life endowment or health and accident insurance policy or any annuity contract issued by a life insurance company, heretofore or hereafter issued, become payable and the insurer makes payment thereof in accordance with the terms of the policy or contract or in accordance with any written assignment thereof or of any interest thereunder, hereafter made, the person then designated in the policy or contract or by such assignment as being entitled thereto, shall be entitled to receive such proceeds or payments and to give full acquittance therefor, and such payment shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office, written notice by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy or contract. Nothing contained in this Section shall affect any claim or right to any policy or contract or the proceeds thereof or payments thereunder as between persons other than the insurer."
Payment was made by the defendant insurer to the person then designated in the policy as being entitled thereto, and the payment was made before the insurer received at its home office written notice by or on behalf of some other person that such person claimed to be entitled to such payment. The payment to Mrs. Helen Jane Morein was made on April 29, 1971, and the first written notice of any other claim which the home office received was by means of the letter from the attorney employed by the insured's children, dated May 21, 1971. Under that statute, therefore, defendant must be held to have fully discharged its obligation under the insurance contract by making payment to the *316 named beneficiary. We find no merit to plaintiff's argument that a change in beneficiary had been accomplished by the request which was submitted to the local agent, Gellar, and that plaintiff thus was the "person designated in the policy" as being entitled to the payment.
We conclude that the request submitted by the insured, Morein, to defendant's local agent, Gellar, was not sufficient to effect a change of beneficiary in the policy, since no such request in written form was ever sent to or received by the home office of defendant. We also find that the payment made by defendant to the beneficiary named in the policy, Mrs. Helen Jane Morein, fully discharged defendant from all further claims under the policy, since no written notice of any other claim had been received by the defendant at its home office before such payment was made. Plaintiff has failed to show that she was the primary beneficiary in the policy, and the trial court correctly held that she is not entitled to recover from defendant "on the policy" or on a contractual basis.
We turn now to the question of whether plaintiff is entitled to recover in tort.
Plaintiff alleges, alternatively, that "the wishes and desires of the insured to change the beneficiary were thwarted by the defendant's failure and neglect over a period of five months or more and said failure and neglect resulted in effecting the said change of beneficiary by operation of law." The trial court considered that as an alternative demand "sounding in tort, based on defendant's neglect to consummate the requested change of beneficiary over a period exceeding five months following receipt of the request for change by the insured."
Although the trial judge held that LSA-R.S. 22:643 precludes plaintiff from recovery "on the policy," he nevertheless awarded her the full amount of the policy as damages because of Gellar's negligence. He reasoned that Gellar was the agent of defendant, that he had ample time within which to "follow through with the insured," that he knew of the controversy between the insured's wife and his children and he admitted that he kept the home office posted as to that controversy, and that the defendant nevertheless paid the proceeds of the policy to the insured's wife without invoking a concursus proceeding.
Plaintiff has failed to point out any duty which either Gellar or defendant owed to her. No contractual relationship existed between her and defendant before the death of the insured occurred, so there could have been no breach of contract insofar as she is concerned. The trial judge held, and we agree, that a change of beneficiary was never accomplished in this case, so plaintiff acquired no vested right in the policy or in the proceeds of that contract.
We have been referred to no authorities which hold that an insurer owes a duty even to its insured, much less to a person who may be named as a new beneficiary, to track the insured down after he orally indicates that he wants to change the beneficiary, and to obtain his signature on the Change of Beneficiary form. We are aware of no case where the insurer has been condemned to pay damages to a person who may have been named as beneficiary because the insurer or his agent failed to aggressively pursue the insured to see that the change of beneficiary was effected.
Actually, we find no negligence on the part of Gellar. He contacted Morein at least one time personally and advised him that he would have to sign the Change of Beneficiary form in order to make the change effective. After that Gellar mailed the form to Morein with the request that he complete and return it. These contacts with Morein were sufficient to inform the insured of the fact that the change of beneficiary would not become effective until he executed the proper form for requesting such a change. Since Morein had that information, neither he nor the prospective new beneficiary thereafter could have been *317 misled into thinking that a change of beneficiary had already been effected. Under those circumstances, we think the insured was under at least as much duty as was the agent to complete the change of beneficiary, if the insured actually wanted to go forward with his earlier expressed plan of making such a change.
We are unable to determine from the evidence whether the insured still wanted to change the beneficiary up to the time of his death. The only time he ever expressed such a desire was on or about August 13, 1970, when he wrote or talked to Gellar. We interpret Gellar's testimony to be that he contacted Morein personally within a few days after that date, and informed him that he would have to sign the Change of Beneficiary form in order to completed the change. Morein thus must have known that the change had not been effected when the separation decree between him and his wife was rendered and when he executed the community settlement agreement on September 22, 1970. It seems to us that he would have taken some steps at that time to remove his wife as beneficiary under the policy if that was still his intent. It would be speculative, we think, to assume that Morein continued steadfast in his desire to change the beneficiary up to the time of his death, or to conclude that Geller could have obtained his signature to effect such a change if he had persisted.
Our conclusion is that the trial court erred in awarding damages to plaintiff.
For the reasons assigned the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, North American Company for Life and Health Insurance, and against plaintiff, Mrs. Odette Andrus Morein, rejecting plaintiff's demands and dismissing this suit at her costs.
The costs of this appeal are assessed to plaintiff-appellee.
Reversed.