## KUMOR v. THE SCOTTISH UNION & N. I. CO.

(No. 1845; June 19, 1934; 33 Pac. (2d) 916).

The cause was submitted for the defendant and appellant on the brief of *S. M. True* of Denver, Colorado and *John G. Hutton* and *Roy Bedford* of Sheridan, Wyoming.

For the plaintiff and respondent, the cause was submitted on the brief of *R. E. McNally* and *Maurice L. Cone* of Sheridan.

RINER, Justice.

In this case, review by direct appeal is sought of a judgment of the District Court of Sheridan County, which allowed a recovery for a fire loss under an insurance policy issued by the defendant and appellant, The Scottish Union and National Insurance Company, a corporation, which will be hereinafter generally designated as the "insurer." John F. Magoon, named in this policy as the "insured," will usually be mentioned as the "vendee," and Ed Kumor, the plaintiff and respondent, as the "vendor."

The record discloses the following facts: The insurer is a foreign corporation authorized to conduct the business of insuring property in this state against loss or damage by fire. Under date of June 18, 1928, the vendor agreed, by written contract, to convey to the vendee, through sufficient warranty deed, Lots 11, 12 and 13, in Block 28, of Suburban Homes Company Addition to the City of Sheridan, Wyoming, together with the improvements thereon, upon the vendee's paying the purchase price of $1346.90, in certain specified payments. The contract contained the following clause:

"The party of the second part agrees to keep the buildings on said premises insured in a sum not less than present amount, in favor of and payable to party of the first part, as his interests may appear."

The party of the second part thus nominated was the vendee of the property.

On May 11, 1931, the insurer, through its Sheridan, Wyoming, agency, issued to the vendee its policy insuring him against all direct loss and damage by fire, in the sum of $1200, on the one and one-half story, frame building, situated on Lots 11 and 12, aforesaid. There was attached to the policy a "Contract of Sale Clause," to be described more in detail later, wherein Magoon was designated as "vendee," and Kumor as "vendor."

While the policy, aforesaid, was in force, and on April 23, 1932, the insured building was completely destroyed by fire. The insurer, having declined to pay the loss, the vendor brought action against it, in the District Court of Sheridan County, to enforce his alleged rights under the contract of insurance, making Magoon, also, a defendant.

After the issues were made up, a trial to the court without a jury resulted in a general finding in favor of the plaintiff and against the defendants, together with the finding that, on the date when the fire occurred, the balance unpaid on the contract of sale, aforesaid, was $1350.17, a sum which exceeded the face value of the policy, and that, hence, Magoon, on said date and also on the date of the judgment, had no interest in or claim to the proceeds of said policy. Judgment was, accordingly, entered for the vendor against the insurer, for the sum of $1279.33 and costs, and Magoon was adjudged to have no interest at all in the policy proceeds.

In criticism of this judgment, the insurer directs our attention to certain provisions appearing in the issued policy, as follows: "This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof;" also, "Unless otherwise provided by agreement in writing added

hereto this Company shall not be liable for loss or damage occurring  *  *  *   (b) while the hazard is increased by any means within the control or knowledge of the insured;" and, referring to the insured building, that it is "occupied and to be occupied only for dwelling purposes."

In connection with these provisions, the "Contract of Sale Clause," attached to the policy, as aforesaid, is relied on, that clause, so far as material here, being:

"If this policy be not payable to a mortgagee, trustee or beneficiary under deed of trust, the proceeds of this policy, subject to all its terms and conditions, shall be payable to said vendor and/or said vendee as follows:

"FIRST: To said Vendor, to an amount not exceeding the balance unpaid, at the time of loss, upon the contract of sale above referred to; and

"SECOND: The balance, if any, to said Vendee."

The argument advanced for the insurer upon these contract stipulations and the record, as we understand it, is that the vendor, under the Contract of Sale Clause, was bound by all the "terms and conditions" of the insurance contract to the same extent as the vendee, and that, if the latter violated any of them so as to cause a forfeiture of the policy, then the insurer is not liable to the vendor, in consequence. With this position, it seems that counsel for the vendor agree. We, too, are inclined to think it correct, for the terms of the Contract of Sales Clause, as we read them, accomplish exactly what is generally said by the authorities to be the legal effect of the simple loss-payable or open-mortgage clause. In Howrey v. Star Insurance Company of America, 46 Wyo. 409, 28 P. (2d) 477, quoting from 5 Couch on Insurance 4426, § 1215a, it was said:

"The courts are practically agreed that, under a simple loss-payable or open-mortgage clause, which,

unlike the standard mortgage clause, contains no provision regarding the rights of the mortgagee in case of a breach, in a policy of insurance issued to the mortgagor, and payable to the mortgagee as his interest may appear, the mortgagee is simply an appointee of the insurance fund, whose right of recovery is no greater than the right of the mortgagor, so that a breach of the conditions of the policy by the mortgagor which would prevent a recovery by him, precludes recovery from the insurer by the mortgagee."

But it is argued upon the foregoing as a premise that, in the case at bar, the vendee violated the provisions of the policy quoted above because, as it is said, the hazard was increased through the use by the vendee of the insured premises as a bootlegging establishment. The law on this point seems to be as stated by 26 C. J. 558, § 775, on the authority of a multitude of cases:

"If the policy specifies certain acts as constituting an increase of hazard or risk such as to avoid the policy, and the facts are not in dispute or the evidence thereon is clear or uncontradicted, the question whether there has been such an increase of hazard or risk is for the court to determine. But where the evidence is conflicting or permits of different inferences, the question is for the jury whether certain acts increased the risk, as is also the question whether insured had knowledge or control of the acts constituting an increased hazard, where the provisions of the policy are thus qualified."

In the instant case, the action was tried to the court without a jury and a general finding was made, as we have said, in favor of the vendor and against the insurer. If there is substantial evidence in the record to sustain the finding or if it was made upon evidence conflicting in character, under familiar rules governing appellate court practice, it must stand. The previous decisions of this court have reiterated these principles so often, it is unnecessary to cite them now. Our examination of the record leads us

to think that, under them, we may not interfere with the finding thus made by the trial court.

It appears that one of the attorneys for the insurer engaged in the trial of the case testified, as a witness in its behalf, that in June, 1932, the vendee came to his office in Denver, Colorado, having been sent there by the adjuster who handled the matter of the loss here involved for the insurer; and that the vendee told him, in response to questioning, that he bought the place for the purpose of carrying on a bootlegging trade, and had so conducted the place ever since he bought it, including the time of the fire, and that he kept liquor stored there. The adjuster, aforesaid, testified that, responding to his questions, the vendee stated that he carried a stock of liquors at the location of the fire, having started a bootlegging establishment at that place. A Mr. Edwards, engaged in the local insurance business, testified that the insurance hazard would be increased in a residence by its being "used for the illicit traffic in liquor and the possession of liquor and sales in the premises." On cross examination, he stated substantially that the habitual conduct of a public resort every day and every night with a crowd there would materially increase the hazard. The insurer also introduced the records of a justice of the peace of Sheridan County showing that, on a search warrant returned February 9, 1932, certain liquors were found on Lots 11 and 12, Block 28, Suburban Homes Addition to the City of Sheridan, Wyoming, belonging to the vendee; that, on the date last mentioned, he pleaded guilty to, was fined, and given a suspended sentence to jail for the unlawful possession of liquor and, also, the unlawful sale thereof in Sheridan County to a party named; and that on March 26, 1932, he violated the terms of the suspended sentence, aforesaid, by having in his possession liquor unlawfully.

The vendor, however, testified that he visited the vendee's place once or twice a month; that the vendee rented other property, in the same block with this property under contract of sale, the other house being located close to the highway; that the house which burned was located about 200 feet from the highway; that the house last mentioned was furnished as an ordinary home was furnished; that he never saw any beer there; that the house was never used at all for bootlegging purposes, but strictly for a dwelling house by the vendee and his wife; that the vendee entertained in the house near the highway, and the liquor would be in this house. The vendee was not present at the trial and gave no testimony in the case.

Counsel for the insurer frankly concede that the testimony as to increase of hazard was not as definite as they "might wish." When the testimony of Edwards is analyzed ,it is far from clear that its purport was that an increase of hazard would flow from the facts proven regarding the use of the house where the loss occurred. There does not seem to be any proof whatsoever of the details which he testified would, in his opinion, result in an increased hazard, i. e., that the house was an habitual public resort for the illicit traffic in liquor. The testimony of the insurer's attorney and its adjuster, as to statements of the vendee, did not afford such proof. For aught that appears, the vendee's bootleg trade might have been simply to supply the requirements of a few customers only and not the public generally. Even if this testimony be regarded as indicating an illicit traffic in liquor in its most objectionable form, yet there is still the testimony of the vendor that the burned house was never used at all for bootlegging but strictly as a dwelling house, and that another house entirely was used by the vendee for his entertaining with liquor. This produced a conflict in the testimony which the trial court had

the power to resolve in favor of the vendor. It heard and saw the witnesses, a privilege not accorded us.

It appears that on April 28, 1932, at Sheridan, Wyoming, five days after the fire, the vendee signed an "Adjuster's Agreement" with the insurer, through its adjuster, which stated that:

"It is Hereby Agreed that the whole sound value of the property described in Policy No. 839746 of the Scottish Union & Nat. Company, issued at its Sheridan, Wyo. Agency, and the whole loss and damage to said property by the fire of April 23, 1932, is, after a full examination, agreed upon in compromise and finally determined to be as follows: Sound value of dwelling $1028.89. Whole loss thereon $1028.89. Total insurance thereon $1200.00 inc.

"The consideration of this agreement is the avoidance of all misunderstanding or dispute as to the amount of said sound value and loss and damage, and is without reference to any other condition or provision of the policy or any matter of difference thereunder."

It is said that the judgment in question is erroneous because no recovery should have been permitted in excess of the amount thus stipulated as the sound value and whole loss on the property; and that the vendor, although he was not a party to this adjustment agreement, is bound thereby. A careful examination of the authorities leads us to think that this contention cannot be sustained.

In 26 C. J. 412, we find the text citing the decisions of a number of courts of last resort in the country of undoubted standing and authority, and stating that:

"Where a mortgagor and a mortgagee are both interested in the insurance, their respective rights having attached at the time of the loss or prior thereto, it is usually held that an adjustment with one is not binding on the other."

In 38 A. L. R. 383, in a well prepared note reviewing the cases, it is also said:

"The weight of authority is to the effect that a mortgagee entitled to the proceeds of an insurance policy by virtue of a simple loss-payable clause in the policy is not affected or bound by an adjustment of the loss, whether by arbitration or agreement, by the insured and the insurer, without his knowledge or consent."

We have already indicated our view that the Contract of Sale Clause, incorporated in the policy in the case at bar, is, in legal effect, identical with the simple loss-payable clause.

So, in 5 Couch on Insurance 4434, § 1215a, a very late and exhaustive work on the subject, listing many cases in its support, it is likewise declared that:

"The weight of authority is to the effect that a mortgagee entitled to the proceeds of an insurance policy by virtue of a simple loss-payable clause in the policy is not affected or bound by an adjustment of the loss, whether by arbitration or agreement, by the insured and the insurer, without his knowledge or consent."

The case of Hall v. Fire Association of Philadelphia, 64 N. H. 405, 13 Atl. 648, was an action on policy of fire insurance issued by the defendants on the property of one Hall, and made payable in case of loss, to Woodman, mortgagee, as her interest might appear, thus presenting a loss-payable clause, it will be observed, which resembles closely the Contract of Sale Clause in the policy at bar. Hall, without the knowledge, consent, or authority of Woodman, submitted the question of the loss to referees, who awarded a sum less than the mortgage debt due to Woodman. The defendants claimed that Woodman was concluded by the award. Holding against this contention, the court used the following language:

"The policy might have been avoided by Hall's breach of its conditions, because such was the contract.

Baldwin v. Phoenix Ins. Co., 60 N. H. 164. But at the moment of the loss the rights of the parties were fixed. Whatever amount was secured by the policy to the extent of the mortgage debt was due to Woodman. To her the defendants were bound to pay it. Hall could not release the defendants from their obligation, nor defeat Woodman's right. He could no more adjust the amount of the loss than he could release it. Harrington v. Fitchburg Ins. Co., 124 Mass. 126, 131; Brown v. Roger Williams Ins. Co., 5 R. I. 394, 399; Browning v. Home Ins. Co., 71 N. Y. 509. Woodman not being a party, or privy to the reference, is not concluded or affected by the award. Mahagan v. Mead, 63 N. H. 130."

In Hathaway v. Orient Insurance Company, 134 N. Y. 409, 32 N. E. 40, 17 L. R. A. 514, the mortgage held by the plaintiff contained a covenant that the buildings should be kept insured against damage by fire for the benefit of its holder. Breckon, the mortgagor, procured a policy of the defendant which described Breckon as the owner and Hathaway as the mortgagee, and provided that in case of loss the damages should be "payable to Hathaway as his mortgage interest may appear." A loss occurred and the mortgagee sued to recover under the policy. Stating the point for decision, the court of appeals said:

"The liability of the insurer is admitted ,and the question here is whether the owner of the property and the insurer may, without the concurrence of the mortgagee, effect an accord and satisfaction without the assent of the latter."

After reviewing the authorities, the court's conclusion upon the matter is stated thus:

"Upon principle and authority it seems to be clear that the defendant in this case had no authority to agree with the owner as to the amount of the damages, and determine as between him and the mortgagee what sum was payable to each, and the accord and satisfaction entered into between the insurer and the owner is

not a bar to a recovery by the mortgagee of his damages."

See, also, Insurance Underwriters' Agency v. Pride, 172 Ark. 1016, 294 S. W. 19; Leslie v. Firemen's Insurance Company of Newark, N. J., 112 N. Y. S. 496.

Stress is laid on the fact that the vendor is bound by the terms and conditions of the policy, but no provisions of the policy here involved have been called to our attention which authorize clearly and unmistakably the vendee to act for the vendor in making an adjustment agreement such as is here presented. Especially is this true when the proofs submitted in the case establish that the amount unpaid and due the vendor from the vendee on the contract of sale at the time of the fire exceeded the face of the policy. Hence, under the terms of the Contract of Sale Clause, aforesaid, the vendee had no interest whatsoever in the proceeds of the insurance contract accruing in consequence of the loss. It would certainly seem good law that only by virtue of explicit and positive provisions in the policy to that effect should a vendee, who has not the slightest claim upon its proceeds, have the right, simply by his own agreement with the insurer, to destroy any part of the claim of the vendor.

It is finally urged, as the vendee was brought into the case by constructive service only, that the District Court of Sheridan County had no jurisdiction to enter a judgment determining the right of the vendee to the proceeds of the policy. No authorities are cited in support of this proposition. Section 89-817, Wyo. Rev. St. 1931, provides for such service of process in subdivision 4 thereof:

"In actions which relate to, or the subject of which is real or personal property in this state, when a defendant has or claims a lien thereon, or an actual or contingent interest therein, or the relief demanded consists wholly or partly in excluding him from any in-

terest therein, and such defendant is a non-resident of the state, or a foreign corporation, or his place of residence cannot be ascertained."

The affidavit for service by publication in the case at bar was apparently grounded upon this provision of the law and distinctly stated, among other facts, that the residence of the vendee was unknown and could not with reasonable diligence be ascertained, the steps taken to disclose such diligence being set forth.

In New England Mutual Life Insurance Company v. Woodworth, 111 U. S. 138, 4 Sup. Ct. Rep. 364, 28 L. Ed. 379, the Insurance Company, a Massachusetts corporation, had issued a policy to the plaintiff, Ann E. Woodworth, in Michigan. After her death in New York State, the plaintiff, her husband, moved to Illinois and there procured letters of administration upon his deceased wife's estate. The Insurance Company did business in that state, having a statutory agent upon whom process could be served. The husband brought an action in the state court in Illinois, which was subsequently removed to the Federal court for the Southern district in that state, to recover on the policy. It was contended that, on the facts, the debt of the Insurance Company on the policy was not assets of the estate of the deceased wife within the State of Illinois as she was not domiciled in that state, and that the proceeds of the policy were local assets only at Boston, the only domicile of the debtor corporation, and consequently, the letters of administration were issued without power to do so. The national court of last resort, however, in ruling against this contention, and referring to the Illinois statutory requirements exacting of foreign insurance companies the appointment of an agent to receive service of process, said:

"In view of this legislation and the policy embodied in it, when this corporation, not organized under the laws of Illinois, has, by virtue of those laws, a place

of business in Illinois, and a general agent there, and a resident attorney there for the service of process, and can be compelled to pay its debts there by judicial process, and has issued a policy payable, on death, to an administrator, the corporation must be regarded as having a domicil there, in the sense of the rule that the debt on the policy is assets at its domicil, so as to uphold the grant of letters of administration there."

21 R. C. L. 1284, § 28, says that:

"Indeed, almost any kind of action may be instituted and maintained against nonresidents to the extent of any interest in property they may have in the state, and the jurisdiction to hear and determine in this kind of cases may be obtained wholly and entirely by publication."

In Morgan v. Mutual Benefit Life Insurance Company, 189 N. Y. 447, 82 N. E. 438, it appeared that a foreign insurance company which transacted business in New York issued its policy to a resident of that state, who, the company assenting, assigned it to another resident as collateral security for premiums advanced; that the assignee died and his trustees held the policy as an asset of his estate. It was held that the subject matter of an action against the company and the beneficiaries under the policy to recover the amount of the premiums advanced was personal property within the state, under the civil code authorizing service of summons on a nonresident defendant by publication, where the complaint demanded judgment that the defendants be excluded from an interest in personal property within the state, and the nonresident beneficiaries could be served by publication. In the course of its opinion, the court remarked:

"The presence of the insurance company in this state is not temporary, but continuous. It is legally and actually here, not only because process has been served upon it and it has appeared in the action, but it is here pursuant to the provisions of our statutes by authority of which it is doing business and maintain-

ing offices in this state. The contract of insurance was made by it with a resident of this state through its agents so located and doing business here. Every transaction relating to the contract, its assignment, and the payment of premiums thereon has occurred here. The policy of insurance and the claim against the insurance company for the amount payable on the policy of insurance are in the control of our court, and any judgment that may be rendered in the action can be enforced and made effectual in this state. As to such a claim, the insurance company should be treated as a domestic insurance company and as domiciled in this state. The situs of the debt would consequently be here, and the action is one to define and enforce an interest in specific personal property within the state within the meaning of the Code provision quoted. Whenever a question as to the situs of a similar claim against an insurance company doing business in a state pursuant to the statutes thereof has been directly involved in this court or in the federal courts, and it has been sought to uphold the situs of the claim in the state where the contract was made, it has been sustained."

To the same effect is Morgan v. Mutual Benefit Life Insurance Company, 16 Cal. App. 85, 116 Pac. 385.

Under these authorities, we think it clear that the proceeds of the policy accruing by virtue of the loss were personal property within this state and that the district court had jurisdiction to determine the ownership of the fund, upon constructive service, as against the vendee.

Finding no error in the record presented here by the insurer, our conclusion is that the judgment should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.