141 So.2d 841 (1962)
FIDELITY-PHENIX FIRE INSURANCE CO. OF NEW YORK
v.
FOREST OIL CORPORATION.
No. 478.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 1962.
*843 Benjamin W. Yancey, Rufus C. Harris, Jr., Terreberry, Rault, Carroll, Martinez & Yancy, New Orleans, for plaintiff-appellant.
Roger H. Doyle, Doyle, Smith & Doyle, New Orleans, for defendant-appellee.
Before SAMUEL, JOHNSON and HALL, JJ.
JOHNSON, Judge.
The plaintiff has appealed from a judgment of the Civil District Court for the Parish of Orleans which dismissed plaintiff's suit by maintaining an exception of no right of action filed on behalf of defendant.
Plaintiff issued its fire insurance policy to Evangeline Wells Service, Inc., (sometimes hereinafter called Evangeline), covering an oil well drilling rig. The assured made written proposal to Forest Oil Corporation (sometimes hereinafter called Forest) to rework an oil well in Cameron Parish, Louisiana, owned by defendant. The plaintiff alleges in its petition that the assured commenced to rework said well under the supervision and control of defendant, the owner and operator of the well; that the workover was completed in the early morning hours of September 3, 1957; that at all times pertinent thereto the defendant had engineering and technical supervisory personnel present at the workover operations; that all decisions concerning the workover were made by agents of defendant; that after defendant's representatives released the rig and left the location employees of the plaintiff's assured commenced to disassemble their equipment preparatory to moving the rig to another location; that at approximately 5:00 a. m., on the morning of September 3, 1957, the well suddenly blew out and caught fire, almost completely destroying the workover rig, along with other equipment at the location; that under the terms of plaintiff's insurance policy the plaintiff paid to its assured $177,906.64 for damage to assured's property; that upon the payment by plaintiff to the assured, the plaintiff obtained a full subrogation and assignment of all rights of the assured to any and all claims against defendant, and made amicable demand of defendant to pay the amount. Defendant denied liability and this suit followed.
The exception of no right of action is based primarily upon a provision or stipulation in the insurance policy, which reads as follows:
"The insurers waive right of subrogation against any individual, firm or corporation, for whom the Assured may be performing workover or drilling operations, but this waiver shall apply only in respect to the specific contract existing between the Assured and such other individual, firm or corporation, and shall not be construed to be a waiver in respect of other operations of such individual, firm or corporation when the Assured has no contractual interest."
On the trial of the exception, the evidence shows that on June 25, 1957, Evangeline wrote a letter to Forest, reading as follows:
"Attached hereto is inventory of our Rig No. 3, which we propose to furnish complete for work to be performed on the above subject well.
"We will furnish a four-man drilling crew to work three 8-hour tours, necessary auxillary equipment as required, such as turning power tongs w/air compressor, 6" Hydril complete with manifold controls, and substructure extensions for adequate heights *844 for blowout preventers, for $650.00 per 24-hour day.
"The cost of moving rig and equipment to location, including cost of labor and trucks for rigging up will be $4,026.00. In the event it is necessary to use additional equipment to move rig in or out of location, due to ground or weather conditions, this expense will be re-imbursed to us.
"It is our understanding that Forest Oil Corporation will furnish at its own expense, road to location, mats for foundations, drilling mud and chemicals, fuel, water, and all third party services and special tools required for the re-completion of said well. * * *"
There was no formal written acceptance on the part of Forest of the proposal, but Evangeline moved to the well location and commenced its workover operations. It was not necessary on the trial of the exception to determine whether the Evangeline performed this drilling operation as an independent contractor or under the supervision of Forest through its engineers as alleged in the petition. The allegations are sufficient on the face of the petition to set up a tort liability on the part of defendant, which in the absence of a waiver of subrogation, would entitle the plaintiff, upon the payment of the loss, to be subrogated to Evangeline's right of action against Forest. It is the position of plaintiff that the waiver of the right of subrogation contained in the policy, and quoted hereinabove, was not in fact such a waiver that would legally deprive plaintiff upon payment of the loss, of its subrogation to any right of action which Evangeline may have against the defendant.
While the language of the waiver quoted above is clear, concise, unconditional and unambiguous, yet on the trial of the exception Mr. Hughes Walmsley, the insurance agent who wrote the policy for plaintiff, was permitted to testify that insertion of the waiver in the policy was for the purpose of giving him, as agent for the insurance company, authority to make specific waivers to oil well operators with whom Evangeline made contracts, and that a specific waiver would have been issued to this defendant upon request for it. The provision quoted above does not say that. Under this stipulation as long as it is in the policy the agent has no right of selection, from those with whom its assured contracts, to make the waiver effective or not effective as the agent may desire. The agent and the assured can, of course, revoke the stipulation under proper circumstances. The plaintiff did, in fact, on at least one other occasion issue a specific certification of waiver to Cities Service Oil Company on June 13, 1957, in connection with a drilling contract under which Evangeline was performing an oil well workover for Cities Service Oil Company. It seems to be the agent's contention that he has the right to select from new operators for whom Evangeline contracts to drill, and to issue certificates of waiver to some of them and not to others, and in this manner deprive those others of any policy protection. We cannot read that power in the agent into the stipulation.
In a deposition, Mr. R. H. Berkeley, President of Evangeline, said that it was his understanding that his policy had a waiver of subrogation in it; that most companies require a certificate showing that subrogation rights are waived, but if they do not ask for the certificate they don't get it; that Forest did not ask and that this was the first occasion that he knew of when such certificate had not been requested by Forest in the four or five years that his company had done work for Forest; that Forest always requested a certificate showing that there was waiver of subrogation rights. He supposed that Mr. Willis (representing Forest) thought that was included or he would have asked for it. At first, he said that he had furnished such a certificate by mailing it to *845 Mr. Warner (for Forest) in San Antonio and a copy to Mr. Willis in Lafayette. On examining his records later he found the certificate only mentioned coverages for workmen's compensation, personal liability and property damage and that it just didn't enter his mind as to whether subrogation had been waived as to Forest Oil Corporation. He said that Evangeline always furnished such certificate if it was requested; that he was sure Forest intended to request it, and he thought that Forest assumed that the certificate issued also certified waiver of subrogation, and he was sure "They thought." (he was cut off from completing the sentence by interruption of counsel for plaintiff with another question).
Forest Oil Corporation did request a certificate of insurance on the part of Evangeline after the fire on September 3rd, 1957, and such a certificate was issued on October 16, but this certificate did not mention subrogation. It is quite apparent that the purpose of furnishing a certificate by Evangeline's insurance company showing that subrogation rights were waived as against any concern with which Evangeline had a contract, is to assure or notify that concern of the existence of a waiver in Evangeline's insurance coverage. It is apparent that the certificate is merely for information. It is nothing more than a confirmation of what has already been stipulated in the policy. It serves no greater purpose than any other type of communication, such as a letter or telegram. The absence of any request on the part of defendant herein to be furnished such a certificate does not in any way lessen or write out the plain provisions of the policy first quoted above. It is understandable that Forest did not make any request to be furnished this information, for the reason that, as explained by Mr. Berkeley, for four or five years on various other jobs which Evangeline had performed for Forest there was waiver of subrogation rights and it is reasonable to believe that Forest assumed that which was a fact, that there had been no change in such policy provision.
Mr. L. J. Maxwell testified in a deposition that he was President of Workover, Inc., and he was the owner of M & M Drilling Company, which companies were insured by the same policy issued by plaintiff to Evangeline. Mr. Maxwell did not explain what connection he had with Evangeline, if any, but said that he signed the proof of loss, release and subrogation to this plaintiff on October 4, 1957, and that he specifically intended to grant receipt and subrogation to the plaintiff but did not intend by that to alter the policy in any way. Counsel for defendant argues that Maxwell was not the agent of Evangeline and had no right or authority to issue subrogation to the plaintiff on behalf of Evangeline. It would appear that counsel is correct in that contention, but it is not necessary that we pass upon that point in view of our conclusions reached herein.
It is the contention of counsel for plaintiff that the provisions in the policy waiving subrogation rights against any individual, firm or corporation, for whom the assured may be performing drilling operations, is not a waiver of the right of plaintiff to become subrogated to Evangeline's claim for damages against this defendant, but he does not explain what he thinks it is. While counsel's petition does not allege a contract relationship between Evangeline and Forest, in his brief he refers to the letter of June 25, 1957, quoted above and said that "Ultimately the letter contract submitted by Evangeline was accepted by Forest and the rig was moved on location." Counsel further states that the grounds of this appeal are that (1) the Louisiana Civil Code provides for legal subrogation; (2) that the fire insurance policy of plaintiff to Evangeline included a specific provision granting plaintiff subrogation; (3) that this policy also included provisions for waiver of subrogation, but only if and when certain conditions are fulfilled, (though he does *846 not say what those "certain" conditions are); (4) that even though there had been a waiver, Forest has no right regarding it, and that (5) the contract between Forest and Evangeline had terminated several hours prior to the loss.
The right of subrogation in Louisiana is created by law. It is a Civil Law concept. Also, there is the uniform provision in the standard fire insurance policy providing that the company shall be subrogated to its assured's rights upon the payment of a loss. The insurance agent testified that the waiver of subrogation rights does not form a part of the printed portion of the policy, but was added by him by typewriting. Of course, that lends weight to it, and the waiver must prevail over the printed provisions granting the right to be subrogated upon the payment of the loss. The right of subrogation was abrogated. Smooth v. Metropolitan Life Ins. Co., La.App., 157 So. 298; Lake Arthur Dredging Co. v. Mechanics Ins. Co., 162 La. 1090, 111 So. 466; Dean v. Pisciotta, 220 La. 725, 57 So.2d 591.
There is no merit to counsel's contention that the provision of the policy quoted above, whereby the plaintiff waived the right of subrogation against any individual, firm or corporation, for whom the assured may be performing workover or drilling operations, was ineffective with regard to Forest for the reason that when the provision was inserted in the policy there was no known right as against Forest, there being at that time no contractual relation between Evangeline and Forest, and for the further reason that the right of subrogation arises only upon the payment of a loss. If counsel intends by that to say that a waiver of a right of subrogation can not be made prior to the happening of some event resulting in loss to the assured, then his argument is met with the waivers certified to other concerns under this same provision of the policy. For instance, the certificate to the Cities Service Oil Company certified the waiver of rights of subrogation in connection with work which Evangeline contracted to do for that company in this same policy period, but it is not contended that any loss had occurred giving rise to a claim by Evangeline against Cities Service Oil Company, or that there was any acceptance of the waiver by that company. If plaintiff insurance company can waive the right of subrogation by a certificate based on this same policy provision, issued with respect to a named party and specific operation before the happening of any event causing loss to assured, then it is difficult to understand how that can be distinguished from a general waiver in the policy such as the one quoted above, when applied to a contract which Evangeline entered into to perform for a third party, in this case, Forest.
Counsel for plaintiff argues that even though there was a waiver by the provisions of the policy, Forest has no rights thereunder for the reason that such a provision in the policy is a stipulation pour autri and Forest did not signify its assent to accept it, as required by LSA-Civil Code Articles 1890 and 1902. This presents the most difficult question to be resolved and this case now turns entirely on that question. In this connection it is not necessary for this Court at this time to pass upon counsel's final contention that the contract between Forest and Evangeline had terminated before the fire which resulted in loss to Evangeline.
Adverting to the fourth and only important premise of this appeal, our LSA-Civil Code Articles 1890 and 1902 read as follows:
1890. "A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."

*847 1902. "But a contract, in which anything is stipulated for the benefit of a third person, who has signified his assent to accept it, can not be revoked as to the advantage stipulated in his favor without his consent."
It will be noted that the language of neither of these articles renders the benefit of the stipulation of no effect in the absence of an acceptance of the benefit by the third party. Those articles merely say that the beneficial stipulation may be revoked by the principal parties thereto if the benefits have not been accepted by the third party in whose favor the stipulation is made. There is no suggestion that there was any revocation or alteration of that provision of this policy before the fire occurred. The codal articles merely regulate the right of revocation of a stipulation pour autri in the absence of an assent by the third party to accept the advantage created by the stipulation. We do not say that this policy waiver is a true stipulation pour autri. It waives rights to which the insurance company otherwise would be entitled. While the waiver may ultimately result in a saving to the third party for whom the assured is performing services by contract, the insurance company was paid adequate consideration by its assured in the form of a premium, the amount of which it named, to assume full responsibility for any loss within the limit of the coverage. The stipulation grants no right of action which Forest could exercise. By its language it is apparent that the prime purpose of the stipulation is to improve the position of assured in its bargaining for business.
Let us suppose that plaintiff or the assured had certified to Forest when the contract was entered into with Evangeline that in event of loss by fire the right of subrogation in favor of the insurance company was waived. Could it be contended with reason that Forest would have been compelled immediately to write the insurance company to say that Forest assented to the waiver in order to be free from the liability set up in this suit? Was an acceptance contemplated in fact and in law? We assert a definite negative to both questions. Counsel for plaintiff argues that no certificate waiver was given to Forest and Forest has no policy protection; that if a certificate like the one given to Cities Service Oil Company had been issued to Forest, defendant would have been protected. If such a certificate had issued and Forest had said nothing, Forest's silence would have to be construed as an acceptance. In this case, no certificate was issued, and we say that Forest's silence was an implied acceptance of the policy waiver, whether Forest had knowledge of the stipulation in the policy or not, if, by law any acceptance is necessary.
The document issued to the Cities Service Oil Company is in the form of a policy endorsement. The only purpose it serves, that is, the only language it adds to the policy is the name of Cities Service Oil Company, and that "ten (10) days' prior notice of cancellation of or material change in this policy will be given Cities Service Oil Company, Insurance Department, Bartlesville, Oklahoma. All other terms and conditions remaining unchanged." Obviously, that certificate to Cities Service Oil Company did not add any force or effect to the waiver as to that third party with whom Evangeline contracted. It did do away with the power which the insurance company and Evangeline had to revoke the subrogation waiver without notice. If the waiver in this case is a true stipulation pour autri, then Forest could have taken away any right of revocation of the waiver by assenting to or accepting the stipulation, which the Cities Service Oil Company could have done without the certificate.
The crucial test of whether the language of a stipulation by the parties in a commutative contract is a stipulation for the benefit of a third party, denominated by our Civil Law term as a stipulation *848 pour autri, is: does the stipulation originate or create a right of action in favor of the third party? If it does, then, by the requirements of LSA-Civil Code Articles 1890 and 1902 the right of action, or benefit, must be assented to by such third party to preserve the stipulation against possible revocation only, unless the contract containing the stipulation is of such peculiar kind or class that acceptance is presumed. In this connection, the late Judge Provosty discussed at length, citing many authorities, the necessary attributes of a provision to constitute it a stipulation pour autri, in Allen & Curry Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980, 68 L.R.A. 650. That decision said (p. 986): "The essential point must always be as to whether there was the intention to confer a right of action."
Our Supreme Court held in First State Bank v. Burton, 225 La. 537, 73 So.2d 453, that: "The legal result of such a stipulation is to give the party in whose favor it is created `another and additional debtor'. Gay & Co. v. Blanchard, 32 La.Ann. 497, on rehearing, 505." The stipulation here before us creates no right of action in favor of Forest.
The jurisprudence of this state has definitely established the status of stipulations for the benefit of third parties in life insurance policies. A life insurance policy has been and is now recognized as sui generis, and for that reason the beneficiary in whose favor a stipulation is made in a life insurance policy is not required to formally accept such benefit in order to take away the right of revocation of such a stipulation. The life insurance policy provision for the benefit of a third party can not be revoked or altered without the consent of that party even though there has been no acceptance on the part of such third party, as provided in the articles of the code, quoted above. Ticker v. Metropolitan Life Insurance Co., 11 Orl. App. 55; Sizeler v. Sizeler, 170 La. 128, 127 So. 388; Succession of Desforges, 135 La. 49, 64 So. 978, 52 L.R.A.,N.S., 689; Breard v. New York Life Ins. Co., 138 La. 774, 70 So. 799; Pilcher v. New York Life Ins. Co., 33 La.Ann. 322.
We do not make the flat-footed holding that a fire insurance policy which contains a stipulation pour autri is sui generis and that such a stipulation cannot be revoked without the consent of the third party beneficiary, when there has been no assent by the third party. Granting for the sake of the argument that the provision waiving the right of subrogation in this policy is a stipulation pour autri in favor of Forest, we do find it difficult to distinguish this fire insurance policy from a life insurance policy, insofar as the application of the doctrine of sui generis is concerned that is, classifying it as being governed by rules peculiar to itself. In re Brotherhood of Locomotive Firemen and Enginemen, 9 La.App. 74, 119 So. 79.
Counsel for both parties agree that there is no pertinent reported Louisiana decisions holding that a fire insurance policy is sui generis to the same effect that the Courts have applied the doctrine to the life insurance contracts. The only difference to be detected is that the life insurance policy specifically names the beneficiary of the stipulation. The stipulation in this fire insurance policy is general, but certainly as effective in accomplishing the desired waiver as if the waiver related to an existing contract and the third party by name. Under this general waiver as soon as Evangeline is engaged by contract to perform services for a third party, such contract breathes life into the policy provision waiving subrogation rights as to that third party, who at that moment becomes vested with an interest in the benefit if any of that provision as much as if the third party were named in the stipulation. The stipulation had not been revoked on the morning of September 3, 1957, on the happening of the event which caused the loss, which event terminated and fixed the rights of all parties, just as *849 much as death of the insured in a life insurance policy. What the rights of this defendant would be if plaintiff and its insured had revoked the waiver after the contract by Evangeline and Forest was entered into and before the fire we do not say, because we are not here confronted with that situation. The stipulation had not been altered or revoked when the fire caused the loss, thereby terminating the right of plaintiff and its assured to revoke or alter the provisions of the policy to the prejudice of this defendant. It is the contention of counsel for plaintiff that after the happening of the event which caused the loss, the payment of the debt on the part of plaintiff and the assignment by subrogation to plaintiff of Evangeline's alleged rights against this defendant, a month after the fire, were in effect a revocation of the provisions of the policy referred to. It is certain that if the waiver of the right of subrogation contained in the policy is in fact a legal waiver of such right, (and we say it is), the issuance of the subrogation on the part of Evangeline to this plaintiff after the fire which caused the loss was an idle gesture and of no legal effect whatever. It is our belief that a revocation of such a policy provision must be express and explicit and made before the loss insured against is incurred.
The standard fire insurance policy (LSA-R.S. 22:691) must provide that:
"If loss hereunder is made payable in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation."
That provision in a policy does create a right of action in favor of the mortgagee, but we have no knowledge that there has ever been any contention that the mortgagee must assent to the stipulation in order to exercise the right of action conferred by it, if the insurance company does not comply with it. Such a loss payable clause in a fire insurance policy comes nearer fulfilling the office of a stipulation pour autri than the waiver of the right of subrogation contained in the policy in the instant case. There being a paucity of Louisiana decisions covering this phase of the discussion, we call upon the authorities of foreign jurisdictions which are at least persuasive to the effect that such a provision cannot be revoked after the loss occurs. In 38 A.L.R. 379, we quote this reference:
"In Browning v. Home Ins. Co. (1877) 71 N.Y. 508, 27 Am.Rep. 86 affirming (1876) 6 Daly 522, it was held that a statement by an insured, made after a fire, as to a sale by him of the premises subsequent to the issuance of the policy and contrary to its terms, was not admissible against the mortgagee under a loss-payable clause in an action on the policy, the court stating that upon the loss the defendant's liability had become fixed and the mortgagee had acquired rights in a cause of action which the declarations of the mortgagor could not affect or change."
At the same volume and page, we quote this:
"While the mortgagee's right of recovery under an indorsement on a policy issued to the mortgagor, making the loss payable to the former, may be defeated by any breach of conditions by the assured before loss occurs, it cannot be defeated by an act of the assured after the loss has occurred. Bergman v. Commercial Union Ins. Co. (1891) 12 Ky.L.Rep. 942."
At page 385 of 38 A.L.R. reference is made to Harrington v. Fitchburg Mut. Fire Ins. Co., 124 Mass. 126, where "it was said that under a policy made payable to the mortgagee in case of loss, his rights were fixed at the time of the loss, and the mortgagor could no more adjust the amount of the loss with the insurer than he could release it." Following, to *850 the same effect, are cited Hall v. Fire Ass'n of Philadelphia, 64 N.H. 405, 13 A. 648; Georgia Home Ins. Co. v. Stein, 72 Miss. 943, 18 So. 414; Aetna Ins. Co. v. Cowan, 111 Miss. 453, 71 So. 746; Aetna Ins. Co. v. Pelham, 115 Miss. 229, 76 So. 153. The cases cited above were decided a good many years ago. It is interesting to note that there has been no change in modern jurisprudence on this same subject, as evidenced by these up-to-date decisions where the same rulings prevailed: Sargeant v. Firemen's Ins. Co. of Newark, 89 N.H. 171, 195 A. 346; Minniefield v. Consolidated Lloyds, Tex.Civ.App., 316 S.W.2d 428; Superior Lloyd's of America v. Boesch Loan Co., (Tex.Civ.App.), 153 S.W.2d 973; Remedial System of Loaning v. New Hampshire Fire Ins. Co., 227 Ky. 652, 13 S.W.2d 1005.
There was no revocation and the waiver was in force at the time of the loss. The plaintiff wrote the policy without any right of subrogation and it is bound by its terms.
For these reasons, the judgment appealed from is affirmed with cost to be paid by plaintiff.
Affirmed.
SAMUEL, Judge (concurring).
I believe that the insurance policy provision waiving the right of subrogation is a stipulation pour autri. LSA-Civil Code Articles 1890 and 1902 simply provide that such a stipulation may be made and cannot be revoked if the third party has accepted the stipulation. A revocation is permitted in the absence of such an acceptance. But the very fact that a revocation is permitted in the absence of an acceptance necessarily presupposes the existence of a valid contract; otherwise there would be no need to revoke. The articles do not give the right to revoke after the occurrence of the event forming the essence of the stipulation. After that occurrence there remains nothing to revoke. In the instant case, when the fire and resulting loss took place the waiver of subrogation became an accomplished fact and plaintiff became irrecoverably bound thereby.
Because I differ only in this one feature of an exceptionally thorough and well considered opinion, I respectfully concur.