Lewis W. CONNER, Appellant,

v.

NORTHWESTERN NATIONAL CASU-
ALTY COMPANY, a Foreign
Insurance Corporation, Appellee.

No. 65571.

Supreme Court of Oklahoma.

May 30, 1989.

Donald C. Welch, Ponca City, for appel-
lant.

Richard C. Honn, Rogers, Honn & Asso-
ciates, Tulsa, for appellee.

SUMMERS, Justice.

When Plaintiff Lewis Conner sold his
bait and tackle shop to the Andersons, he
received $16,500.00 down and carried a
first mortgage for $27,000.00 on the bal-
ance of the purchase price. The mortgage
required Anderson to keep the property

insured against fire loss for the benefit of Conner in the amount of the mortgage, and Anderson did so. The fire insurance policy with defendant Northwestern National Casualty Company contained a "Contract of Sale Clause" naming Conner as an additional insured.

The bait shop burned with the mortgage debt fully unpaid. Northwestern promptly settled with the Andersons, issuing checks payable jointly to Conner and Anderson, and mailed them to the address of the bait shop, which was that of the Andersons. Anderson presented the checks for payment containing what purported to be Conner's endorsement, but which was not. In fact, Conner knew nothing of the settlement or of the checks bearing his name. When he made claim on the insurance contract the company asserted it had fulfilled its obligation by issuing checks payable to both insureds jointly, and couldn't be liable if one of the payees committed an act of forgery. Conner sued. Our question is thus to determine if mortgagee Conner is bound by the settlement negotiations between Northwestern and mortgagor Anderson. The trial court on Motion for Summary Judgment held that he was. The Court of Appeals held he was not and reversed.[1] We have granted certiorari to review what is a case of first impression in Oklahoma. We agree with the result of the Court of Appeals (but for somewhat different reasons), and rule that the case must be remanded for trial.

Other operative facts concerning the coverage and the "settlement" are these: the policy insured against fire loss to personal property for $9,500.00 and fire loss to the building for $30,000.00. The checks written by the Company and delivered to Anderson totaled $9,500.00 for "Personal Property" (in which Conner had no interest) and $15,675.00 for "Building" (which was approximately the amount of Anderson's equity but just over half of the coverage on the building afforded by the policy).

The insurance company argues that the "Contract of Sale Clause" endorsed to the policy is not the standard mortgagee loss payable clause,[2] and does not expressly state that Conner retains a mortgage. The endorsement provided:

"A contract of sale for the property described in this policy having been made between the Insured and Lewis W. Conner, Eastman National Bank Escrow, Newkirk, Oklahoma 74607, the interest of said last named party is also insured hereunder, but without any increase in the amount of insurance...."

We agree with the Court of Appeals that turning the case on that distinction would be drawing the line too fine. People of ordinary business acumen would understand the clause to indicate a secured transaction with payments to be made later. It clearly operated as notice to the Company that Conner had an insurable interest in any loss proceeds payable under the policy. By statute in Oklahoma all contracts for deed of real property are deemed mortgages and are "subject ... to the same regulations, restraints, and forms as are prescribed in relation to mortgages". 16 O.S.Supp.1983 § 11A. The endorsement here must be viewed as one protecting a mortgagee under a loss payee clause.

That is not to say it is the equivalent of the statutory or "standard" loss payee clause; a distinction exists between standard and so called "simple" mortgagee loss payee clauses. Without elaborating unnecessarily, suffice it to say that the standard clause *expressly* protects the mortgagee against mortgagor's misdeeds (such as here), and subrogates the Company to the mortgagee's rights versus the mortgagor when payment is made to the mortgagee. *Couch on Insurance*, 2d (Rev. ed.) § 42:682. *Okla. State Union of Farm Ed. v. Folsom*, 325 P.2d 1053 (Okl.1958). Since the clause in question contains no such express protection (it does not refer to

---

1. The Court of Appeals opinion, though designated for publication, has appeared only in a one paragraph summary at 59 O.B.J. 379 (Feb. 6, 1988).

2. The form for such a clause is statutorily provided in 36 O.S.1981 § 4803.

a mortgage) we give it legal effect equivalent to the *simple* loss payee clause and now proceed to ascertain what that is.

Under a simple loss payee clause, it is uniformly understood that the interest insured is that of the mortgagor (vendee in this case), not the mortgagee (or vendor). *Wharen v. Markle Banking & Trust Co.*, 145 Pa.Super. 99, 20 A.2d 885 (1941); *Scania Ins. Co. v. Johnson*, 22 Colo. 476, 45 P. 431 (1896); *Reed Auto Sales v. Empire Delivery Service*, 127 Colo. 205, 254 P.2d 1018 (1953); *Cloud Co. Bank v. German Ins. Co.*, 6 Kan.App. 219, 49 P. 688 (1897). This results in the mortgagee simply being the appointee to receive the insurance proceeds, and his right is no greater than that of the mortgagor. *Reserve Ins. Co. v. Aguilera*, 181 Neb. 605, 150 N.W.2d 114 (1967); See *Puckett v. S.E. Plaza Bank*, 620 P.2d 461 (Okla.App.1980, cert. denied).

But does that rule bind the mortgagee to a settlement reached between the mortgagor and insurer? Not according to a majority of jurisdictions that have considered the matter. The predominant rule is that a mortgagee entitled to proceeds of an insured loss by reason of a simple loss payable clause is not affected or bound by an adjustment of the loss, whether by arbitration or settlement, between the insured mortgagor and the company without the mortgagee's knowledge or consent. *Hahn v. National American Fire Ins. Co.*, 233 Mo.App. 756, 127 S.W.2d 94 (1939); *St. Louis County Natl. Bank v. Maryland Casualty Co.*, 564 S.W.2d 920, 929 (Mo. App.1978); *Hathaway v. Orient Ins. Co.*, 134 N.Y. 409, 32 N.E. 40 (1892); *U.S. Fidelity & Guaranty Co. v. Annunziata*, 67 N.Y.2d 229, 501 N.Y.S.2d 790, 492 N.E.2d 1206, 1208 (1986); *Insurance Underwriter's Agency v. Pride*, 173 Ark. 1016, 294 S.W. 19 (1927); *Lumbermen's Mutual Ins. Co. v. Wheeler*, 225 Ark. 657, 284 S.W.2d 620, 622 (1955); *Aetna Ins. Co. v. Cowan*, 111 Miss. 453, 71 So. 746 (1916). *Fidelity–Phenix Fire Ins. Co. of N.Y. v. Forest Oil Corp.*, 141 So.2d 841, 850 (La.Ct.App.1962). In *Hall v. Fire Ass'n of Philadelphia*, 64 N.H. 405, 13 A. 648 (1888) the Court said that the mortgagor "could no more adjust the amount of the loss than he could release it.." *Id.* at 649. See also, *Sargent v. Firemen's Ins. Co. of Newark*, 89 N.H. 171, 195 A. 346 (1937). In *Kumor v. Scottish Union & National Ins. Co.*, 47 Wyo. 174, 33 P.2d 916 (1934), where a *"contract of sale"* clause was attached to the policy the buyer's adjustment agreement with the insurer as to the value of the building and amount of fire loss was held not binding on the seller. For cases adhering to the other position see *Green v. Fidelity–Phenix Fire Ins. Co.*, 233 N.C. 321, 64 S.E.2d 162 (1951); *Erie Brewing Co. v. Ohio Farmer's Ins. Co.*, 81 Ohio St. 1, 89 N.E. 1065 (1909).

■ In today's case, Northwestern wants the *question* to be whether it should be liable to a joint payee named on the settlement check when the check was cashed with a signature allegedly forged by the other joint payee. It claims it cannot be liable for someone else's conversion, citing *Ford Motor Credit Co. v. Aetna Casualty & Surety*, 64 Misc.2d 413, 314 N.Y.S.2d 831 (1970). We would view that as the proper question *if* Northwest had settled the fire loss with both parties and then issued the checks as they did here. In fact Northwestern never settled the loss with plaintiff Conner, the other named insured. We find persuasive the above cited cases that hold he is not bound by such an adjustment made without his knowledge or consent. He still has an unliquidated claim for his loss as an insured loss payee, and is entitled to a day in court.

In cases where both litigants are innocent, as here, and one will suffer at the hands of a third party wrongdoer, it seems better to affix the loss upon the one who could more easily have averted it. That, of course, could have been accomplished if the Company had delivered the policy proceeds to Conner or his named escrowee, the Eastman National Bank of Newkirk. This would have been consistent with our directions in *Savings Building & Loan Ass'n v. Seaman–Packard Lumber Co.*, 170 Okl. 331, 40 P.2d 660, 662 (1935) wherein we said:

It appears under the well-settled propositions of law that the mortgagee was entitled to the proceeds of this fund to the extent of its mortgage, and after the satisfaction of the mortgage the remainder should be delivered to the property owner. This seems to be the almost universal application of the law in these cases. See 26 C.J., at page 438, where the text reads as follows: "Where the insurance is taken out by the mortgagor for the benefit of the mortgagee, or is made payable to the mortgagee as his interest may appear, the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt, holding the surplus, if any, after the extinguishment of his debt, for the benefit of the mortgagor."

We hold that plaintiff Conner, as the named insured loss payee under contract of sale, was not bound by the insurance company's settlement agreement with Anderson without Conner's knowledge or consent. Borrowing from New Hampshire's *Hall* case, supra, Anderson here could no more settle Conner's loss than he could release it. The opinion of the Court of Appeals is vacated, but its result survives; the summary judgment for the insurer is reversed and the case remanded for trial on the issues raised by the pleadings.

HODGES, DOOLIN, ALMA WILSON and KAUGER, JJ., concur.

SIMMS, J., conurs in result.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, J., concur in part/dissent in part.