**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 4 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RGS CONTRACTORS, INC.,

    Plaintiff-Appellant,

v.

GC BUILDERS, INC., A Texas
corporation,

    Defendant,

and

GMAC COMMERCIAL MORTGAGE
CORPORATION, a California
corporation,

    Defendant-Third-Party-Plaintiff-
Appellee,

v.

ANTHONY GULLO, an individual;
JOHNNY CLARK, an individual; THE
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

    Third-Party-Defendants.

No. 02-6167

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 01-CV-1712-M)**

---

Robert L. Magrini (Alan W. Bardell with him on the briefs) of Hayes & Magrini, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Michael D. Gray (James E. Britton with him on the brief) of Britton, Gray, Ramsey and McCutcheon, P.C., Oklahoma City, Oklahoma, for Defendant-Appellee.

————————————

Before **BRISCOE**, **McKAY**, and **MURPHY**, Circuit Judges.

————————————

**McKAY**, Circuit Judge.

————————————

On December 1, 1997, Appellant RGS (contractor) and GC (owner) entered into a written Construction Contract Costs Plus for Appellant to build a project called the Apache Trace Apartments [Project]. Appellee GMAC provided the mortgage and HUD insured the loan. Appellant contractor maintained a builder's risk insurance policy through Kemper Insurance which premium was reimbursed by GC. Appellant is the "named insured" under the policy, and Appellee is listed as an "additional insured." Aplt. App., Vol. I, at 105, 119. A standard mortgage clause was added in favor of Appellee "as interest may appear." Id. at 122.

The Mortgage Note executed on December 1, 1997, between GC owner and Appellee GMAC provides in pertinent part:

> That the Mortgagor will keep the improvements now existing or hereafter erected on the mortgaged property insured against loss by fire and such other hazards, casualties, and contingencies, as may

be stipulated by the Federal Housing Commissioner upon the insurance of the mortgage and other hazards as may be required from time to time by the Mortgagee.

That if the premises covered hereby, or any part thereof, shall be damaged by fire or other hazard against which insurance is held as hereinabove provided, the amounts paid by any insurance company in pursuance of the contract of insurance to the extent of the indebtedness then remaining unpaid, shall be paid to the Mortgagee, and, at its option, may be applied to the debt it released for the repairing or rebuilding of the premises . . . .

Id. at 128. On December 1, 1997, GC owner also executed a Financing Statement and Security Agreement in favor of Appellee. Id. at 133-38. This Security Agreement identifies all insurance proceeds as collateral for all amounts secured by the Security Agreement. Id. at 135.

On June 22, 1998, prior to substantial completion of the Project, a portion was damaged by fire. Appellant submitted a claim with Kemper on June 25, 1998. Kemper paid more than required to rebuild the Project, agreeing to pay Appellant for the reconstruction work, including ten percent profit and ten percent overhead. All parties agreed to use the insurance proceeds to rebuild the Project to its original specifications. A dispute arose as to the proper distribution of the "excess" insurance proceeds paid by Kemper.

Because of the dispute over the excess insurance proceeds and in order to expedite the process of reconstruction, Appellant contractor and GC owner entered into a Memorandum of Understanding [MoU] regarding the excess

insurance proceeds. The MoU states that it does not alter any prior agreements between the owner and Appellee or HUD. Id. at 32. Appellee and HUD were not parties to the agreement. However, they were aware of the MoU and approved it. The MoU called for binding arbitration regarding the distribution of the excess insurance proceeds. Id. at 31. The MoU also indicated that the excess insurance proceeds would be placed in an Escrow Fund with Appellee pending the arbitrator's award. Id. at 30.

Appellant finished the restoration work in December 1999. Then, on March 1, 2000, Appellant contractor and GC owner participated in arbitration pursuant to the MoU. The arbitrator granted the funds to Appellant stating that "RGS is entitled to the monies escrowed . . . since no other entity – GC, GMAC or HUD – has a claim to the Escrow Fund since the Project was rebuilt to pre-fire specifications." Id. at 68. Appellant demanded payment from Appellee in accordance with the arbitration award. Appellee refused to disburse the excess insurance proceeds. On December 4, 2000, the arbitrator's award was confirmed and reduced to judgment by the district court. The court stated that "[t]his Order does not address the issue of whether [Appellee] GMAC is bound by the arbitration award, as that issue is not before the Court at this time." Id. at 80.

On January 1, 2001, GC owner, not a party to this appeal, defaulted on the loan more than a year after reconstruction was completed by Appellant and the

Project was accepted by GC owner. Appellant filed suit to enforce the arbitration award. Appellant and Appellee then filed cross-motions for summary judgment and partial summary judgment each claiming that it was entitled to the excess insurance proceeds. The district court granted summary judgment to Appellee holding that the excess insurance proceeds were subject to Appellee's perfected security interest and that Appellee "GMAC is entitled to possession of the Excess Insurance Proceeds and to apply the Excess Insurance Proceeds to the debt owing under the Mortgage Note." Aplt. App., Vol. II, at 686. The court also held that Appellee was not bound by the arbitration award because it was not a party to the arbitration and it was not in privity with GC owner. The court found "no fraud, deceit, or failure to disclose on behalf of [Appellee] GMAC" and held that Appellee "did not breach any duty as an escrow agent." Id. at 687.

The main issue on appeal is whether Appellant contractor or Appellee lender is entitled to the excess insurance proceeds. We are also asked to address whether the district court erred in: (1) concluding that Appellee had not waived its right to assert (or was estopped from asserting) a claim to the escrowed funds; (2) determining that Appellee, as escrow agent, had not breached its duties; and (3) concluding that Appellee was not bound by the arbitration award. We review "the grant of summary judgment de novo, applying the same standards used by the district court." Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir.

-5-

1998). A motion for summary judgment is granted when the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.

Appellee argues that the district court correctly awarded it summary judgment because it had a perfected security interest in the insurance proceeds which were not released and would not be released until the Mortgage Note was paid in full. Appellee's argument has two fatal flaws. First, Appellee has incorrectly determined the scope of its security interest in the insurance proceeds as defined by the relevant contracts. Second, Appellee's argument confuses the insurance policy at issue in this case with other types of insurance. An understanding of the type of insurance provided by Kemper and which party bore the risk of loss is important because the character of the insurance proceeds leads to the logical result in this case.

Kemper provided a builder's risk insurance policy to Appellant – not a policy for mortgage insurance. A builder's risk insurance policy is only in place during construction and protects a contractor from risk of loss for a project under construction. 1 Couch on Ins. § 1:53, Third Edition (1999 Supp.). Once the owner accepts the property, coverage ends. Appellant bore the risk of loss in this case while the Project was under construction. This is obvious from both the construction contract and the builder's risk insurance policy.

Pursuant to the construction contract, Appellant was required to promptly remedy damage and loss to the work, other than that which is insured under the property insurance required by the contract. Aplt. App., Vol. I, at 15-28, 66. Appellant was further required to provide the builder's risk insurance for the Project in order to protect against its risk of loss. Id. at 15-28, 66; Aplt. App., Vol. II, at 577. The Kemper builder's risk insurance policy provides that "[w]e cover from the time the property is at your risk starting on or after the time this coverage begins, but we will not cover: a. After the owner or buyer accepts the property; b. when your interest ceases . . . . whichever occurs first." Id. at 109. The Kemper policy further states that "the words 'you' and 'your' refer to the Named Insured." Id. Therefore, all the relevant contract provisions indicate that Appellant bore the risk of loss in this case.

It is true that Appellee also had some interest in the builder's risk insurance proceeds.[1] As mortgagee, Appellee's interest was limited to the amount of mortgaged debt. It is well settled that a mortgagee's recovery and insurable interest are limited to the amount of debt secured by the insured property. See

---

[1]Both parties refer to the builder's risk insurance proceeds left in the Escrow Fund after completion of the Project as "excess insurance proceeds." We agree with the arbitrator that "the term 'Excess Insurance Proceeds' is a misnomer. . . . [I]t defies logic that there could be an 'excess' of [the amount] Kemper agreed to pay RGS for the reconstruction work." Aplt. App., Vol. I, at 68. However, since both parties and the district court refer to the proceeds as excess insurance proceeds, we will continue to do so in order to avoid confusion.

Conner v. Northwestern National Cas. Co., 774 P.2d 1055, 1058 (Okla. 1989).

This interest was protected in the Kemper policy with the mortgage clause

endorsement which provides that loss on the project shall be payable to Appellee

"as interest may appear." Id. at 122. This statement, however, does not change

the fact that Appellant bore the risk of loss. The interest of Appellee as

mortgagee is derived from the Mortgage itself in relation to the construction

contract. The Mortgage provides as follows:

> That if the premises covered hereby, or any part thereof, shall be
> damaged by fire or other hazard against which insurance is held as
> hereinabove provide, the amounts paid by any insurance company in
> pursuance of the contract of insurance to the extent of the
> indebtedness then remaining unpaid, shall be paid to the Mortgagee,
> and, at its option, may be applied to the debt or release for the
> repairing or rebuilding of the premises.

Id. at 128, ¶ 7. Appellee relies in part on the language that "the amounts paid by

any insurance company . . . shall be paid to the Mortgagee, and, at its option, may

be applied to the debt it released for the repairing or rebuilding of the premises."

Id. This provision is indeed instructive. It illustrates that Appellee did have an

interest in the insurance proceeds which arose at the time of the loss and at the

time of payment. According to the Mortgage Note, Appellee then had the option

of satisfying this interest by either 1) using the proceeds to pay down the Note *or*

2) releasing the proceeds to repair the premises.

All parties, including Appellee, agreed to repair the premises. At that time,

the builder's risk insurance proceeds and Appellee's security interest in those proceeds were released. Appellee's only remaining interest in the insurance proceeds was in the completion of the construction contract to the pre-fire specifications. Once the construction contract was fulfilled by the completion and acceptance of the Project, Appellee's interest in any builder's risk insurance proceeds necessarily evaporated. Once rebuilt, Appellee held no security interest in the builder's risk insurance proceeds because any security interest was for the security of the construction contract. Therefore, Appellee had no interest in proceeds once the building was delivered finished.

Additionally, there is nothing in the MoU which changes the result in this case. The MoU defined the rights of GC owner and Appellant in relation to the builder's risk insurance proceeds. Whether Appellee and HUD are bound by the MoU is irrelevant because Appellee's interest in the proceeds evaporated when the decision to rebuild was made – *before* the execution of the MoU.[2]

Appellee focuses on the fact that the insurance proceeds exceeded what was necessary to complete the Project. However, "nothing in the mortgage documents gives [Appellee] a right to any amount paid by an insurance company simply

---

[2]Whether or not Appellee was bound by the MoU was not specifically addressed by the district court. The record is not fully developed for us to make such a determination on appeal. Because this question will be relevant in a determination of whether or not Appellee breached its duties as an escrow agent, the district court will need to address this issue on remand.

because it exceeds the original contract price." Aplt. App., Vol. I, at 67. Kemper agreed to pay Appellant for the reconstruction work, including ten percent profit and ten percent overhead. We agree with the arbitrator that

> [t]he fact that these amounts may have resulted in a higher price for the restoration work than originally performed in the contract is irrelevant. Once the parties determined to rebuild, the interest of all concerned was to see that the reconstructed work was per the original plans and specification, i.e., that was equivalent to the pre-fire structures. It apparently was.

Id. at 68.

In a sense, Appellee is looking for a double recovery. While it is true that GC owner defaulted on the mortgage, Appellant did deliver a finished and accepted project. Appellee's security interest in the construction of the Project was satisfied by the completion of the Project. Allowing Appellee to keep the excess insurance proceeds for damage done (and repaired) during construction would allow Appellee to pay down the mortgage debt with money to which it had no claim.

In summary, Kemper did not provide mortgage insurance. Appellant has no responsibility for payment of any part of the Mortgage Note above and beyond the delivery of the finished Project as per the construction contract. We do agree that Appellee had some interest in the builder's risk insurance proceeds at the time of the fire simply because the fire threatened the completion of the Project as contemplated in the construction contract. However, this interest was limited to

-10-

*either* using the proceeds to pay off the mortgage debt *or* for rebuilding the Project. Id. at 128. Once the decision to rebuild was made by all parties, Appellee's interest in the insurance proceeds ceased. At that point, Appellee's interest remained only to the extent that it had a security interest in the Project being built to pre-fire specifications. Therefore, once the Project was rebuilt to pre-fire specifications and accepted by the owner, Appellee's security interest ceased. Appellee's security interest did not survive the decision to rebuild the Project and the restoration of the Project to its pre-fire condition. Once the Project was rebuilt to pre-fire specifications, GMAC's interests were fully satisfied.

We hold that Appellee was not entitled to apply the escrowed excess insurance proceeds to the defaulted loan. It is unfortunate that GC owner defaulted on the loan after completion of the Project. However, Appellee's recourse lies solely with pursuing GC owner.

Appellant also argues that Appellee, as an escrow agent, breached its duties to Appellant. In its opinion, the district court noted that whether or not Appellee was holding the insurance proceeds in escrow was a disputed fact. The district court held that Appellee did not violate its duty as escrow agent based on Appellee's perfected security interest. Since we hold that Appellee does not have a perfected security interest in the insurance proceeds, we cannot make an

adequate determination based on the record of whether Appellee as escrow agent breached its duties. This issue must be reconsidered by the district court in light of our opinion.

Because we hold that Appellant is entitled to the "excess" insurance proceeds, it is unnecessary to decide 1) whether Appellee waived its right to assert or was estopped from asserting a claim to the excess insurance proceeds, and 2) whether Appellee was bound by the arbitration award.

**REVERSED** and **REMANDED** to the district court with directions to enter summary judgment in favor of Appellant on the issue of entitlement to the excess insurance proceeds. The district court will need to make a determination as to the amount of these proceeds. Additionally, the district court will need to reexamine whether Appellee breached its duties as an escrow agent in light of our opinion.